153 So. 246

**GOODWYN et al. v. UNION SPRINGS
GUANO CO.**

5 Div. 144.

Supreme Court of Alabama.
March 1, 1934.

Ball & Ball, of Montgomery, for appellants.

Denson & Denson, of Opelika, for appellee.

174

BROWN, Justice.

Special assumpsit by the holder of cotton warehouse receipts against a public warehouseman operating under the Uniform Warehouse Receipts Act (Code 1923, §§ 10505–10564 [Agricultural Code 1927, §§ 408–473]) and the surety on his bond, for failure to deliver the cotton represented by said receipts on demand of the plaintiff.

Each of the receipts, forty in number, represented one bale of cotton, specifying the weight thereof, and by the terms of the receipt, as averred in the complaint, the warehouseman agreed to deliver to the "bearer." A number of receipts were issued by the warehouseman to himself, and the others to third persons named in the receipts, and all were passed to plaintiff by the defendant Graham, the warehouseman, by delivery merely, without indorsement, as collateral security for an indebtedness due from Graham to plaintiff.

The first contention of appellants is that the complaint was subject to the demurrer filed by the defendants for failing to aver that the receipts were indorsed by the persons to whom issued, and appellants assume that the question is raised by the first assignment of error, that "the court erred in *sustaining* demurrers to the complaint as shown on page 43 of the record." The demurrer was overruled, and this assignment of error presents nothing for review. Moreover, the contention is without merit; the statute providing, inter alia, "A negotiable receipt may be negotiated by delivery—(1) Where, by the terms of the receipt, the warehouseman *undertakes to deliver the goods to the bearer*," etc. (Italics supplied.) Code 1923, § 10546 (Agricultural Code 1927, § 449). And section 10509, Code 1923 (section 412, Agricultural Code 1927), providing: "A receipt in which it is stated that the goods received will be delivered to the bearer or to the order of any person named in such receipt is a negotiable receipt. No provision shall be inserted in a negotiable receipt that it is non-negotiable. Such provision, if inserted, shall b void"—makes negotiable a receipt for delivery to the bearer. 27 R. C. L. p. 970, § 25.

It has been held that the title to lumber represented by warehouse receipts stipulating for delivery on the bailor's order, passed by delivery, though the receipts could not be negotiated so as to protect the holder as an innocent purchaser, without indorsement. Cleveland Storage Co. v. Guardian Trust Co. 222 Ala. 210, 131 So. 634.

The term "properly indorsed," on the face of the warehouse receipt, when interpreted in the light of the context and the statutes authorizing the negotiation of the receipt by delivery, is either without meaning, or refers to the indorsement of the receipt by the holder when the receipt is tendered for delivery of the property. Code 1923, § 10512 (Agricultural Code 1927, § 415).

The appellants' second contention is that "A party taking warehouse receipts from a debtor who himself operates the warehouse knowing that the cotton is not in existence, cannot hold the debtor's surety liable on his warehouseman's bond."

A sufficient answer to this contention is that, when plaintiff offered the warehouse receipts in evidence, showing the weights of the cotton, proved the demand for delivery and a failure to deliver, the reasonable market value of the cotton, and made proof of the bond, it made a prima facie case, and shifted to defendants the burden of showing a lawful excuse for nondelivery. Cleveland Storage Co. v. Guardian Trust Co., supra; Code 1923, § 10512 (Agricultural Code 1927, § 415).

And the statute provides that "A warehouseman shall be liable to the holder of a receipt issued by him * * * for damages caused by the nonexistence of the goods,"

etc. Code 1923, § 10526 (Agricultural Code 1927, § 429).

Under the facts of this case this statute precludes the warehouseman, Graham, from asserting as a defense the nonexistence of the cotton. As before stated, some of the receipts were issued by Graham as warehouseman to himself, the others were issued by him to third persons, and all were delivered by Graham to the plaintiff as representing cotton covered by the mortgages held by plaintiff against Graham and his tenants; and, in the absence of evidence going to show that through the connivance and collusion of Graham and the plaintiff, with the fraudulent intent to mulct the surety, the surety standing in the shoes of its principal is in no better position than the principal, and cannot assert the defense of the nonexistence of the cotton. Vallee v. Imex Warehouse Co., Inc., et al., 9 La. App. 703, 118 So. 900; 38 A. L. R. 1210, note.

The evidence falls short of showing, without dispute, that the plaintiff had notice that any of the receipts were fictitious, and there is no evidence showing that the plaintiff was guilty of fraud or was in collusion with Graham in the issuance of any of the receipts. On the question of notice the evidence was in conflict, and the question of notice was left to inference.

The appellants' next contention is that the holder of a cotton warehouse receipt, who takes the same with notice that the cotton is incumbered by a prior mortgage, is not entitled to delivery of the cotton, and cannot recover for nondelivery of same.

Before the warehouseman will be permitted to assert this defense, he must show delivery to a person holding the permanent title. Code 1923, § 10545 (Agricultural Code 1927, § 448).

No such delivery is shown. The appellants assert in brief that " * * * it is quite likely that that is just what was done in this case, that is that Graham turned the cotton over to the Bank of Eclectic, the holder of the first mortgage, and that is where it went." This is, at most, mere conjecture, and judgments cannot be predicated upon conjecture. Smith v. Eudy et al., 216 Ala. 113, 112 So. 640.

The next contention of appellants is that a warehouseman's surety is not liable for breaches occurring prior to the effective date of the bond.

This may be conceded to be a sound proposition of law; yet it cannot avail appellants here. The breach constituting plaintiff's cause of action was the failure to deliver on demand, which the undisputed evidence shows occurred after the bond was given.

The appellants' fifth contention is predicated on the testimony of Mr. Finn, the treasurer of the Union Springs Fertilizer Company, that "The Union Springs Fertilizer Company is a corporation. The Union Springs Fertilizer Company just took the Union Springs Guano Company over. No, there is not still a Union Springs Guano Company. There is no such company in existence now. Yes, there is a Union Springs Fertilizer Company. * * * The Union Springs Guano Company was dissolved on September 28th, this year. Yes, the Union Springs Fertilizer Company has taken over *practically* all of the assets of the Union Springs Guano Company." (Italics supplied.)

This suit was filed September 17th of the same year.

The contention is that, under the principles of the common law, the dissolution of a corporation "abates all pending action by or against it," and that section 7069 of the Code of 1923 is without influence to prevent the abatement of the pending suit where all the assets of the corporation have passed to the absorbing corporation.

In the first place, the predicate upon which appellants base their contention does not show that *all* the assets of the plaintiff corporation were taken over by the Union Springs Fertilizer Company, nor that the warehouse receipts and the cause of action arising from the failure of the defendant to make delivery of the cotton represented thereby were among the assets taken over. "Practically all" certainly does not mean all, but clearly imports that some part of the assets was retained by the plaintiff corporation.

But, aside from this, this court has ruled that the very purpose of section 7069 was to preserve the life of the corporation for certain purposes, among others, that it might prosecute and defend pending suits and wind up its business. 48th Street Inv. Co. v. Fairfield-American Nat. Bank, 223 Ala. 44, 134 So. 803; George D. Witt Shoe Co. v. Mills, 224 Ala. 500, 140 So. 578; Pearce v. Brilliant Coal Co. et al., 200 Ala. 630, 77 So. 4.

It has also been ruled here that the effect of the statute is to prevent abatement of pending suits and to allow the absorbing corporation, at its election, to be substituted by amendment and prosecute the suit in its name. Gulf Electric Co. v. Fried, 220 Ala. 464, 125 So. 804.

The next and final contention of the appellants is that "no grade is specified on the receipts," and "it is not shown what grade of cotton the receipts covered."

The evidence shows that the parties to the transaction were dealing with respect to cotton grown in the general locality where the defendant's business was situated and that all cotton grown in this locality "averaged above middling." This evidence, in connection with evidence showing the market price of middling cotton, was a sufficient predicate for the ascertainment of the plaintiff's damages.

Our judgment is that there was evidence that sustained the special finding of facts by the trial court, and that these facts sustain the judgment rendered.

Affirmed.

ANDERSON, C. J., and THOMAS and KNIGHT, JJ., concur.