**Elvera V. McNAMARA, Appellant,**

v.

**AMERICAN MOTORS CORPORATION,
Appellee.**

No. 16347.

United States Court of Appeals
Fifth Circuit.

July 23, 1957.

John Ruff, John P. Grier, and Wm. J. Pruitt, Miami, Fla., Ruff & Ready, South Miami, Fla., of counsel, for appellant.

Joseph F. Bowen, T. J. Blackwell, and S. J. Powers, Jr., Miami, Fla., Blackwell, Walker & Gray, Miami, Fla., for appellee.

Before HUTCHESON Chief Judge, and TUTTLE and CAMERON, Circuit Judges.

HUTCHESON, Chief Judge.

Brought under Sections 45.11, 768.01, 768.02, Florida Statutes Annotated, the suit sought damages for the wrongful death of plaintiff's husband through the alleged misfunctioning of a 1953 Hudson Hornet automobile.

The claim was that the defendant was negligent in "designing and/or building a car that caused injury to a person making use of it. * * * in that in their 1953 Hudson Hornet the outside jacket tubing of the steering column would turn in its mountings so that the hydramatic transmission would actually be in low gear when the gearshift lever was pulled all the way down and the indicator dial showed it to be in 'reverse', thereby causing the car to go forward instead of backward; which resulted in the death of her husband by drowning when the said Hudson plunged into the Miami River."

The defense was a denial of plaintiff's allegations and a claim that the death of plaintiff's decedent was caused or contributed to by his negligence.

On the issue thus joined, the cause went to trial before the judge and a jury, and, at the conclusion of plaintiff's evidence, defendant moved, for a directed verdict in his favor, upon the several grounds set out in its motion,[1] that the evidence wholly failed to make out a case against the defendant. The district judge, after hearing argument on the

1. "(1) The evidence adduced fails to show a prima facie case of actionable negligence against the defendant.

"(2) The proof fails to show that the defendant was guilty of any negligence at all.

"(3) The evidence fails to show that the negligence of the defendant in the design or manufacture of the automatic shift mechanism, if any defect there was, was the proximate or probable cause of the injuries sought to be redressed here.

"(4) The evidence supports the theory of contributory negligence on the part of

motion and prefacing his action with a brief statement,[2] directed a verdict in favor of the defendant, and, the verdict returned, entered judgment thereon.

Appealing from that judgment, upon two specifications of error,[3] plaintiff is here insisting that plaintiff's evidence taken, as it is required to be, in the light most favorable to her contentions, did present an issue for the jury, and the judgment should therefore be reversed and the cause remanded for trial anew.

We cannot at all agree. On the contrary, we think the plaintiff's claim is untenable in law and in fact. It is untenable in law because it unwarrantedly assumes, contrary to settled law,[4] that

---

plaintiff's decedent as strongly as it does the theory of defendant's negligence.

"(5) The circumstantial evidence adduced in this case by the plaintiff is such that the jury would be forced to speculate as to the cause of the accident.

"(6) The evidence adduced by the plaintiff at this time is susceptible of two equally reasonable inferences.

"(7) The evidence shows that Mr. McNamara, the deceased, met his death under such circumstances that no one can say what were the physical facts relative to the occurrence.

"(8) The evidence fails to support the plaintiff's burden of proof in that it does not show that what might possibly have happened did probably happen in the case of Mr. McNamara's death.

"(9) The evidence shows that the plaintiff has failed to sustain its burden in that it fails to show that the mechanism which was allegedly faultily and negligently designed by the defendant was (a) loose at the time of the accident; (b) if it were loose at the time of the accident, that it was loose due to the negligent design of this defendant; and (c) if all of the above is true, that the looseness was the probable cause of the car going into the river.

"(10) The evidence adduced in this case is such that it can more readily be inferred that plaintiff's decedent met his death from human failures and inadequacies rather than from mechanical failures for which this defendant was responsible.

"(11) The evidence in this case is such that it may be inferred that if the accident occurred because of mechanical failures, such failures were caused by the normal wear and tear rather than any negligent design of this defendant.

"(12) The evidence shows that a reasonably careful man could stop the car in three or four feet, even if the plaintiff's hypothesis of the cause of this accident is correct."

2. The Court: "Gentlemen, this has been an interesting case, and I have listened carefully to the argument made by both sides on this motion. It is my considered opinion that the evidence taken as a whole on the prime issue in this case as to negligence of the defendant in the construction of this part of the mechanism of the automobile involved and the evidence with regard to any proximate cause of the accident resulting from any such claimed negligence, is insufficient under the case of Smith v. General Motors [Corp., 5 Cir.] 227 F.2d 210. We have that case from this district and from this circuit. It isn't exactly like our case here, but the conditions laid down with regard to the degree of proof necessary in establishing such a case to let it go to the jury impresses this court as being the proper rule to follow here. And, therefore, I am going to follow it, and I am going to grant the motion and let you all take the case up further."

3. "(1) That the court erred in granting defendant's motion for a directed verdict at the close of plaintiff's case, upon the authority of Smith v. General Motors Corp., 5 Cir., 227 F.2d 210, as said decision does not compel such a result.

"(2) That the court erred in its ruling that as a matter of law plaintiff's evidence did not raise a question of fact for the jury to decide."

4. Mutual Life Ins. Co. of New York v. Hamilton, 5 Cir., 143 F.2d 726; Gen. Fire & Life Assurance Corp. v. Shero, 5 Cir., 160 F.2d 775; King v. Weis-Patterson Lumber Co., 124 Fla. 272, 168 So. 858; Smith v. General Motors Corp., 5 Cir., 227 F.2d 210, 216, where after citing and discussing cases, the court said:

"* * * Nonetheless the weakness of plaintiff's case is inherent in the absence of any direct proof or any circumstances tending to show by any preponderance that the death of plaintiff's husband was caused by a malfunctioning of his automobile. Appellant has pointed us to no case, and we know of none, in which the courts of Florida have found that a prima facie case of actionable negligence is made out by the plaintiff where he is injured or loses his life under such circumstances that no one can say

theory and speculation, as to how decedent's death occurred, can serve as evidence, satisfying plaintiff's burden to make out her case, and shifting to defendant the burden of showing by evidence that plaintiff's theory was wrong, or of coming forward with a theory of its own, as to decedent's death, and evidence showing it to be a better, that is a more plausible, theory than the one plaintiff advances.

It is untenable in fact because, as appellant herself admits, it is not sufficient for her to show that it was possible for the accident to have happened in the way she theorized it did, she must show that it was more probable that it happened that way, and yet she offers no evidence whatever showing or tending to show that the facts required by her theory actually existed. These required facts are:

(1) that the car was in the defective condition before the accident that it was in after the accident;

(2) that the car was parked in the Salem Inn parking lot on the right side of the inn building between the road and the river, about five feet from and facing the bank;

(3) that the men got into the car, and the driver, unaware of the defective condition in the car, undertook to back out of the parking lot and onto the road, but, because of the defective condition, the car leaped forward, carrying car and occupants over the bank and, turning turtle as it fell, wound up in the middle and bottom of the river with the back of the car toward the bank. Not a single syllable of direct testimony was offered, and not a circumstance relied on tended, to prove any of these facts. Instead, plaintiff offering evidence tending to prove the facts set out below,[5] relied en-

what were the physical facts relative to the occurrence. In Mutual Life Ins. Co. of New York v. Hamilton, supra, this court recognized and gave effect to, as it was required to do, the Florida rule which provides that such a case can go to the jury only if

"'the circumstantial evidence amounts to a preponderance of all reasonable inferences that can be drawn from the circumstances in evidence to the end that the evidence is not reasonably susceptible of two equally reasonable inferences.' Mut. Life Ins. Co. of New York v. Hamilton, 5 Cir., 143 F.2d 726, 732.

"Clearly, here, no one could say that the likelihood that Smith met his death as a result of a mechanical defect is any greater than that the collision with the bridge abutment resulted from human failure which, as reasonable men, we all know greatly preponderates as the cause of automobile accidents."

5. Plaintiff's decedent and a fellow postal employee, Smith, left work at 3 A.M. on Feb. 13, 1954, in decedent's 1953 Hudson Hornet, and, except for the short distance that they were followed by a fellow worker in his car on their customary way of travel, nothing was heard of or from them until a little before 5 A.M., at which time both men were seen together at the door of the Salem Inn, but since the inn was closed, they were denied admittance.

Ten minutes or so thereafter cries for help were heard from the river but an investigation, in which the police joined, revealed nothing.

On Monday, February 15, at 8:30 A.M., McNamara's body was found floating in the river not far from the inn, and shortly thereafter, Smith's body was found in the river some five or six blocks away.

An hour or so after McNamara's body was found, his Hudson automobile, which had been bought by him second hand in Ohio and, according to its speedometer, had been driven some 2500 miles, was found at the middle and bottom of the river in front of and about 80 feet from the Salem Inn parking lot, the gravel surface of which showed auto tracks heading toward the river. No identification of these tracks with the Hudson was attempted and the evidence was that it could not be told whether they were made in acceleration or deceleration. These tracks stopped a couple of feet short of the water's edge.

The sides of the river were perpendicular, with no side slopes, but with rocks or a kind of rip rap along them.

After the car was located by a diver, who testified that there was a very strong tide running, it was pulled to the bank of the river on its roof, by a cable attached to the transmission or differential according to one witness, to the rear axle according to another, and after it had been dragged for a while on its top,

tirely on her theory, that the necessary facts were circumstantially proved. In short, having carefully thought out and advanced a theory which seemed suited to her needs, plaintiff, at the conclusion of her evidence, found herself confronted with the inherent fatal weakness of her case, the absence of any proof, either direct or circumstantial, sufficient under the controlling rule to take the case to the jury upon her claim that defendant was negligent in designing or manufacturing the car and that the death of her husband was proximately caused thereby, as her theory required it to have been.[6]

another wrecker pulling sideways on the cable attached to the frame, turned the car over and the first wrecker pulled it out of the water.

While there was evidence that the cables were not attached to or near the outside jacket tubing of the steering column, the hand controlled system of the hydra-matic or the transmission itself, there was also testimony, as stated above, that it was attached to the transmission underneath or the differential underneath at the back end of the car.

There was also testimony that in the three years more or less which elapsed from the time of its going into the river until the trial, nobody had worked on, repaired, or tampered with the jacket tubing, control mechanism, or linkage system of the hydra-matic transmission since the Hudson came out of the river except to drain the water out of the transmission and refill it with oil.

Two witnesses testified that when the car came out of the river the ignition key was on and the gear shift was in reverse; that the right door window of the car was broken out; that the roof of the car was crushed in; and that there were some dents on the fenders where they turned it over and there was a dent in the gas tank.

The garageman, where the car was stored, testified that after the car was cleaned up and put in running order after it came out of the river, upon putting the gear shift lever in reverse the car went forward instead of backward; and it was testified to that the outside jacket tubing on the Hudson was loose and would turn in its mountings, and that the fact that the tubing did turn was the reason that the dial indicator would show reverse when the tranmission was actually in low, or vice versa, or the engine could be started with the indicator showing neutral while the transmission was actually in drive.

There were no eye witnesses and no testimony as to what actually did happen to cause the car to go into the river, none that McNamara drove the car in, or even that he was in it when it went in, and plaintiff is entirely dependent in establishing her theory upon obtaining favorable inferences from what she did prove as to *those which she was required to prove to make out a case for the jury.*

There was no evidence whatever that the car was not in perfect condition before the accident. Indeed, all the testimony is to the effect that the car gave complete satisfaction and no complaint whatever was made as to its driving or condition.

There was no proof that the car was either designed or manufactured negligently, the uncontradicted testimony being that the method of assembly was the conventional method and that it was used extensively by other car manufacturers, including General Motors, Ford, and Chrysler corporations, and that there was nothing theoretically wrong with it.

It was testified to by Moore, a mechanic, offered by plaintiff, that any tubing could and would become loose and that he had often worked on tubings tightening them. He also testified *that he did not know whether the bolt was rusted or loose in the particular column but he did know that the whole column assembly looked extremely greasy and dirty.*

6. Appellant recognizes, indeed concedes, the necessity to her case of making proof of the facts her theory requires, and, recognizing the extreme difficulties of her situation, arising from the absence of any affirmative proof thereof, she seeks, with a perseverance and skill worthy of a stronger cause, to supply, by theorizing, the fatal absence of the needed proof.

Stating in her brief, "The first and most important inference to be made is that the car was in the defective condition before the accident that it was in after the accident"; and, proceeding from one surmise, conjecture, and speculation to another, she announces, "All of this indicates that the outside jacket tubing turned to the left before the accident", and queries, "The question, then, is how long before the accident?" Proceeding in the same way to make theory and speculation take the place of proof, and conclusion the place of demonstration, appellant reaches and announces this happy result: "Having thus estab-

Without undertaking to match appellant's theories with theories of our own, for the simple reason that the question at issue, whether a jury case was made out, must be determined not by theorizing upon what might possibly have happened, but, by pointing, as it was appellant's duty to do, to evidence which, under settled principles, was sufficient on each essential issue to take her case to the jury, we think it sufficient to say that primarily and necessarily fatal to appellant's case is the fact that, while there was some evidence that at some time after submersion and withdrawal of the car from the river, the outside jacket tubing of the steering column was found in the condition demanded by plaintiff's theory, there was no evidence whatever as distinguished from theorizing, showing or tending to show that this was the condition of the car at any time before its submersion, none showing that the looseness claimed to exist was due to negligence of the defendant in designing or manufacturing the car. Indeed, all the evidence offered by plaintiff, as to the condition of the car and its entirely satisfactory performance before it went into the river, established the exact contrary to have been its condition and that plaintiff signally failed to carry the heavy burden imposed on her by law to offer evidence tending to show, not that the car might have been, but that it was, before it went into the river, in the same defective condition plaintiff claims it is now in.

■ . In this state of the evidence, absent the proof which plaintiff was required to produce as a prime requisite to

her contention that no change had occurred, the jury would have been put in the fantastic position of having to speculate or guess whether the condition, testified to as existing after the submersion, had manifested itself before the car went into the river and whether, if it had, the deceased had been aware of it. It is settled law that verdicts may not rest upon such mere guess or conjecture.[7]

The record standing as it does in this case, no jury, basing its findings upon the evidence, could say what were the physical facts relevant to this occurrence, for the evidence fails to show that what plaintiff theorizes as the cause and course of the decedent's death did so happen. Indeed, the proof is so shadowy, deals so with possibilities instead of probabilities, and the inferences plaintiff would draw from it: (1) that the mechanism was loose at the time the car went into the river; (2) that if it was loose, at that time, this looseness was due to the fault of appellee in designing or manufacturing the car; (3) that the death was caused and occurred as hypothesized by plaintiff; are so entirely dependent on and the fruit of imagination and mere conjecture as to demand a verdict for defendant.

In short, while in the absence of any evidence tending to prove the necessary facts, it is no more for this court than it was for the jury to say what theory, speculation or guess would be nearer to the facts as to where, when and how McNamara came to his death, it is certainly entirely clear that an inference that he met his death, as plaintiff theoriz-

lished the defective condition of the Hudson a brief time before McNamara's tragic end, the rest of plaintiff's theory is strongly borne out by the direct evidence produced by plaintiff at the trial."

Finally, stating, "The next element to be inferred was that the car was parked in the parking lot", and, still making theorizing take the place of the absent evidence, appellant draws the grand conclusion: "From this point on it is inescapable that McNamara went into the river as the result of his Hudson being defective."

7. Magnolia Petroleum Co. v. N.L.R.B., 5 Cir., 112 F.2d 545, 548, at page 549, and cases cited holding that "Jury findings must rest on something firmer than mere suspicion, conjecture, or surmise"; that "The lack of substantial evidence is the test of the right to a directed verdict"; that "substantial evidence is evidence furnishing a substantial basis of fact from which the fact in issue can reasonably be inferred; and the test is not satisfied by evidence which merely creates a suspicion or which amounts to no more than a scintilla or gives equal support to inconsistent inferences."

es that he did, is not established by any evidence having sufficient probative force to take the case to the jury.

While, as above stated, the evidence does not furnish a solid basis for any firm conclusion in this case, we think it not amiss to point out the misleading nature of theory in general and of plaintiff's theory in particular. This, as appellant's brief states it, is: that the car had been driven into the parking lot and parked facing and close to the bank of the river; that the driver, intending to back off of the parking lot onto the street, had put the car in reverse and, because of its defective condition, it had suddenly shot forward, "the wheels accelerating from a dead stop towards the river until the front wheels dropped off the side of the bank and, like a see-saw, lifted the rears off the ground", with the result testified to, that the car wound up in the middle of the river, upside down, with the rear of the car facing the bank. If the matter happened as appellant assumes it did, it does not seem possible for the car, going forward into the river, to have flipped over on its top and ended up with its rear to the bank. The reverse would have been true. No explanation is offered, nor do we think any could be, as to how or why, if the car had gone off head first, it could have landed in the river bottom side up with its rear to the bank. This is not to say that the evidence shows that the car must have backed off and that this would account for the indicator being in reverse. We do not think the evidence is sufficient to take the case to the jury on any theory. It is to say merely that if the case is to be determined on theories, if speculation and surmise are to be the guide, the theory that the car went over backward instead of forward seems to accord with the undisputed physical facts as to how the car was found, while that put forward by appellant fails to do so.

Finally, re-emphasizing that we are not here undertaking to declare that the evidence furnishes a sound basis for any particular theory, and that we are merely pointing out some of the flaws in plaintiff's own theory to make more clear the correctness of our view, we reaffirm that the evidence does not furnish a sufficient basis for taking this case to the jury, and that a verdict for defendant was demanded.

The judgment is affirmed.