**Elmer MILLER, Appellant,**

v.

**BOSTON INSURANCE COMPANY,**
Appellee.

No. 17601.

United States Court of Appeals
Fifth Circuit.

Oct. 6, 1959.

Charles L. Howard, Jr., Birmingham, Ala., Joe Starnes, Jr., Starnes & Starnes, Guntersville, Ala., and Rogers, Howard & Redden, Birmingham, Ala., for appellant.

W. B. Fernambucq, Thomas B. Huie, Huie, Fernambucq & Stewart, Birmingham, Ala., for appellee.

Before RIVES, Chief Judge, and CAMERON and JONES, Circuit Judges.

CAMERON, Circuit Judge.

Appellant Miller, plaintiff below, appeals from a judgment entered upon jury verdict directed by the court at the close of his evidence, in favor of appellee Boston Insurance Company, defendant below. Miller was engaged in constructing a building at Boaz, Alabama for oc-

cupancy by the Piggly-Wiggly Corporation. Just prior to its completion, the building collapsed because its front basement wall gave way soon after a bulldozer or front end loader had completed pushing dirt against the wall and smoothing and packing it in order that a cement walk might be constructed along the front of the store building. The action was predicated upon the Extended Coverage Endorsement attached to a policy issued to Miller by Boston. The portions of the endorsement relied upon for coverage of the collapse and consequent damage are these:

"Extended Coverage Endorsement

"(Perils of Windstorm, Hail, Explosion, Riot, Riot Attending a Strike, Civil Commotion, Aircraft, Vehicles, Smoke, Except as Hereinafter Provided.)

"In consideration of Extended Coverage premium * * * the coverage of this policy is extended to include *direct loss* by Windstorm, Hail, Explosion, Riot, Riot Attending a Strike, Civil Commotion, Aircraft, Vehicles, and Smoke.

* * * * * *

"Provisions Applicable Only to Loss by Aircraft and Vehicles: The term 'vehicles,' as used in this endorsement, means vehicles running on land or tracks but not aircraft. *Loss by aircraft or by vehicles shall include only direct loss resulting from actual physical contact of an aircraft or a vehicle with the property covered hereunder* or with the building containing the property hereunder, except that loss by aircraft includes direct loss by objects falling therefrom. * * *" [Italics added.] ·

The building was one story, except that a basement was constructed under the entire building. Part of the walls of the basement were above and part below the uneven ground on which the building was constructed. The front wall was to be beneath the surface of the ground, which had to be built up in large part by moving dirt to the vicinity of the wall from other parts of the lot and by hauling in some twelve to twenty truckloads. The grading was done by a man named Brown under contract with Miller.

The front wall of the basement was approximately 120 feet in length and 14 feet in height, being constructed of 12 inch hollow concrete blocks. The wall was not braced at any point, and the blocks were not filled with concrete, and no cables or other means of support were placed in the wall, as was done in other portions of the basement.

While the front basement wall was under construction, dirt was gradually pushed in from other portions of the lot by bulldozer and, by the middle of August, 1957, the fill had been completed so that loaded trucks could drive across this wall onto the main floor of the structure. As the dirt was placed against the wall, it had been watered and tamped. All of this took place before the fire insurance policy was issued Sept. 14, 1957, the endorsement in question being added Oct. 1, 1957, at which time the building was practically complete.

One of the last things remaining to be done by Miller, the builder and owner of the building, was to construct a concrete sidewalk adjoining and parallel to the front of the building. The filled dirt along a portion of the wall had settled about 18 to 24 inches, and Miller procured Brown to haul 12 to 20 truckloads of dirt, which were dumped along the front of the building and about six or eight feet from the wall. On October 15, 1957, about four or four-thirty P.M., Brown came with a bulldozer-type machine known as a front end loader and started moving this dirt towards the building with the blade or dipper of the machine. This was done by operating the bulldozer at right angles to the wall in the process of pushing the truckloads of dirt towards the wall. As the machine approached the piles of dirt, the dipper or blade was lowered and the dirt was pushed directly against the wall, whereupon the operator would back the machine away from the wall dragging the blade along the ground to level it. When

this process had been completed, the machine was operated parallel with the wall to pack the dirt. The movement of the vehicle was accompanied by jerks causing considerable vibration.

At no time did any part of the machine touch the wall. There was testimony that on one or more occasions, the blade came within three to six inches of the wall, but most of the time the tracks upon which the machine moved did not come nearer than three feet. This entire operation consumed about forty-five minutes, at which time Brown loaded the machine back onto the truck and left about the same time Miller was leaving. About thirty minutes thereafter the front basement wall collapsed and as the result the entire building fell in, as a consequence of which it had, for all practical purposes, to be reconstructed.

■ The only proof as to what caused the wall to cave in was an opinion given by Miller.[1] Based upon all the evidence, including that quoted supra, the court below, when the plaintiff had rested, directed the jury to return a verdict for the defendant. We think that its action was correct. It is admitted that the vehicle handling the dirt did not make actual physical contact with the wall or any part of the building. That was the only contingency insured against. The words of the policy are plain and simple

and words which are used constantly, and each of them has a definitely established meaning. The setting in which they were used tends to confirm the meaning which the court below attributed to them. The endorsement began with the statement that coverage was extended "to include direct loss by * * * aircraft, vehicles * * *" etc. Coverage as to aircraft was enlarged by providing that it should include loss from objects falling from such craft. With that exception, it is clear that the parties intended that the building was to be protected only from direct loss resulting from actual physical contact of a vehicle or an aircraft with the building. No good purpose will be served by setting out dictionary definitions of words so explicit in their meaning and so well understood by people generally. No case has been cited by either side which assists in arriving at the meaning the parties intended for the words to have.[2]

The words used are plain, unequivocal and unambiguous and they have commonly and universally accepted meanings, and they clearly do not cover the situation to which the appellant seeks to apply them.[3]

■ We are constrained to the conclusion also that appellant would not be entitled to recover even if we should construe the words of the policy in accord-

[1] "Q. Mr. Miller, basing your answer on your past experience in the construction business, what, in your opinion—first, I will ask you do you have an opinion as to what made that front wall collapse? A. Well, I have an opinion.

"Q. Just answer, do you have an opinion, yes or no, please. A. Yes.

"Q. What is that opinion as to the cause of the wall falling? A. The pressure from this tractor.

"Q. From the bulldozer? A. Yes, the front end loader, pushing this dirt in to the wall."

[2] All of the cases cited by appellant are, in our opinion, distinguishable from this one. The language under consideration was, in every instance, different language and the facts dealt with were different facts. Some of the cases are Maness v. Life & Casualty Ins. Co., 161 Tenn. 41, 28

S.W.2d 339; Gilbert v. Life & Casualty Ins. Co., 185 Ark. 256, 46 S.W.2d 807; Davis v. National Casualty Co., 142 Tex. 29, 175 S.W.2d 957; Gould Morris Electric Co. v. Atlantic Fire Insurance Co., 229 N.C. 518, 50 S.E.2d 295; Garford Trucking Co. v. Alliance Insurance Co. of Phil., D.C.N.Y., 98 F.Supp. 781, affirmed 2 Cir., 195 F.2d 381.

[3] Some mention was made in oral argument and the brief contains some reference to the contention of appellant that the insurance agent expressed the opinion that the policy in contemplation would give appellant full protection and that it would have covered the collapse of a retaining wall separate from the building which had theretofore occurred. The point is not pressed, however, and we pass it up as having no merit and as having been abandoned.

ance with his most extreme position, i. e., that the word "vehicle" should be interpreted to mean not only the vehicle itself, but anything it was transporting or which was being moved by it. This is so, because the evidence is not sufficient to make out a case for jury decision that the wall collapsed because of the movement of the front end loader. The collapse did not take place until thirty or more minutes after the loader had left. In view of the length of the wall, the absence of support, and the enormous weight of the super-structure and of the dirt which had on the various occasions been piled against it, we think it would be mere conjecture to assume that the collapse was caused by the movement of the front end loader. Alabama follows the rule that verdicts may not be based upon mere speculation, Southern Railway Co. v. Dickson, 1924, 211 Ala. 481, 100 So. 665; and Goodwyn v. Union Springs Guano Co., 1934, 228 Ala. 173, 153 So. 246.

And we have recently applied this rule to a case tried in a United States District Court in Alabama, E. I. Du Pont De Nemours & Co. v. Kissinger, 5 Cir., 1958, 259 F.2d 411, certiorari denied 359 U.S. 950, 79 S.Ct. 736, 3 L.Ed.2d 683.[4] And we have reiterated in several late cases that jury verdicts must rest on probabilities and not mere possibilities. McNamara v. American Motors Corp., 5 Cir., 1957, 247 F.2d 445; Theriot v.

Mercer, 5 Cir., 1959, 262 F.2d 754; and Stapleton v. L. & N. R. Co., 5 Cir., 1959, 265 F.2d 738.

Finding ourselves in complete agreement with the action of the court below, the judgment is

Affirmed.

RIVES, Chief Judge, concurs in the result.

RIVES, Chief Judge (concurring specially).

In my opinion the dirt hauled by the vehicle should be considered a part of the vehicle in construing the clause " * * * actual physical contact of * * * a vehicle with the property covered hereunder."

Further, unless and until the Supreme Court rules otherwise,[1] I think that our Fifth Circuit is committed to applying the federal rather than the state test of sufficiency of the evidence to support a jury verdict, even though federal jurisdiction is rested on diversity of citizenship.[2]

Applying the federal test, however, in my opinion, there is no substantial evidence from which a jury could properly find that the collapse of the wall was caused by its actual physical contact with either the load of dirt or the vehicle proper. I therefore concur specially.

---

4. These words from the concurring opinion of Chief Judge Hutcheson, 259 F.2d at pages 419, 420, well state the rule applicable here: "In short, it seems clear to me beyond any question that under the evidence in this case, taken, as it must be, most favorably for the plaintiff, the jury could not reasonably find that the defendant had been proven negligent under the invoked rule. * * *

" * * * I know that it has become the fashion in some quarters to consider that a trial by jury means a trial by jury alone in which the jury determines not only what the facts are but whether they are sufficient as a matter of law to make

out a case. This is not yet the rule in the State Courts of Alabama, nor is it the rule in the Federal Courts of that state and this circuit."

1. See Dick v. New York Life Ins. Co., 1959, 359 U.S. 437, 445, 79 S.Ct. 921, 3 L.Ed.2d 935.

2. White v. New York Life Ins. Co., 5 Cir., 1944, 145 F.2d 504, 509; Wright v. Paramount-Richards Theatres, 5 Cir., 1952, 198 F.2d 303, 305; Reuter v. Eastern Air Lines, 5 Cir., 1955, 226 F.2d 443, 445; Continental Casualty Co. v. Holmes, 5 Cir., 1959, 266 F.2d 269.