Cheshire, Dec. 6, 1949. } No. 3869.

GOLDING-KEENE COMPANY

*v.*

FIDELITY-PHENIX FIRE INSURANCE COMPANY.

*Philip H. Faulkner* and *N. Michael Plaut* (*Mr. Plaut* orally), for the plaintiff.

*Frederick W. Branch* (by brief and orally), for the defendant.

KENISON, J.  The first question in this appeal, which counsel advises is one of first impression, is whether or not the bulldozer is a vehicle within the meaning of the policy.  This question must be determined in the light of the well established rule in New Hampshire that "in construing an insurance contract the test is not what the insurance company intended the words to mean but what a reasonable person in the position of the insured would have understood them to mean."  *Hoyt* v. *Insurance Company*, 92 N. H. 242, 243.  The definition of a vehicle used in the policy is not a restricted one but defendant maintains that the definition would convey to the common mind (*Watson* v. *Insurance Company*, 83 N. H., 200, 202), only mechanical contrivances whose primary function is the transportation of persons or property from place to place.  The plaintiff relies on the early case of *Emerson Co.* v. *Pearson*, 74 N. H. 22, holding that a traction engine is a vehicle and the recent case of *American Mut &c. Ins. Co.* v. *Chaput*, 95 N. H. 200, holding that a tractor with alterations permitting it to be used as a shovel or loader was an automobile.  Since these two cases were construed in relation to statutes regulating the safety

of highways, it is fairer to both insurer and insured that they should not be determinative of the present question.

The bulldozer, a self-propelled machine operating on caterpillar tracks, was usually transported by trailer from job to job but it was capable of being used and was in fact used "on a dirt road." While a motor vehicle in the popular sense means a vehicle suitable for use on a street or roadway (1 Blashfield, Cyc. of Automobile Law and Practice, *s.* 2), under the terms of the policy endorsement by definition it was only necessary that the bulldozer be a vehicle "running on land or tracks." In common parlance a vehicle is a broader term than motor vehicle or automobile. This is borne out by the history of the extended coverage endorsement which originated in the 1930's but came into general use only in the last decade. See Magee, Property Insurance (1941) 323. Formerly the coverage was restricted to damage caused by motor vehicles but the present endorsement is not so restricted. In view of the changes as well as the absence of qualifying limitations in the definition there is good reason to believe that none was intended and that it included bulldozers and tractors as well as motor vehicles. *Cf. Koser* v. *American Casualty Co.,* 162 Pa. Super 63; 1948 Annual Survey of American Law 631.

It is true that no case strictly in point has been called to our attention or discovered unless we take those cases which involve highway safety statutes such as *Peterson* v. *King County,* 199 Wash. 106 and the *Chaput* case, 95 N. H. 200, which are in support of plaintiff's case. But, as already noted, these relate to cases where there is a stated public policy for the protection of the highway traveler and their use here would be unfair to the underwriter. That the construction placed on the extended coverage endorsement in this case was actually intended by the insurer, as well as stated, is evident from another portion of the endorsement itself. It specifically provides that the insurer shall not be liable "for any loss or damage to vehicles, fences, driveways, sidewalks or lawns." This provision indicates that exclusions desired are expressly stated. It is not to be assumed that the defendant would contend that the word "vehicle" there used had a restricted meaning so that the policy covered damage to bulldozers and tractors.

The referee found: "The bulldozer was, in a broad sense, a means of conveyance and it ran on land. It is found to be a vehicle." The defendant quotes from the Merriam-Webster International Dictionary the following definition of "vehicle:" "That in or on which a person or thing is or may be carried from one place to another . . . "

The bulldozer had the essential characteristics of a tractor, which were not changed by the addition of a blade on the front. A tractor is defined as "an automotive vehicle used for drawing or hauling something." Webster's New International Dictionary (2d *ed.*) 1948. We cannot say as a matter of law that the bulldozer was not a vehicle within the meaning of the policies of insurance.

Since the endorsement excludes vehicle damage by the owner or a tenant and the agent of either it is urged that the damage in this case is not within the coverage thereof since it was not caused by a hostile vehicle. No such limitation is expressed in the words of the endorsement and to imply it would be unwarranted. By its terms the coverage included damage to certain designated buildings by vehicles and such coverage was not dependent on the fact that it was caused intentionally, negligently or non-negligently. Damage by vehicle to the building by the insured, a tenant or their agent was excluded; such damage by others was included and the manner in which it was brought about was not qualified by the terms of the endorsement.

The use of an eleven ton bulldozer within the insured building is claimed to be such an increase of risk that the policy is rendered void and inoperative. R. L., c. 326, s. 6 provides: "Change or Breach. A change in the property insured or in its use or occupation, or a breach of any of the terms of the policy by the insured, shall not affect the policy, except while the change or breach continues." This statute as construed permits many changes in the situation and circumstances affecting fire insurance risks. It is only those which result in a materially increased risk that make the policy inoperative. *Janvrin* v. *Insurance Co.*, 70 N. H. 35, 36. The change must be one that would " . . . materially and substantially enhance the hazard as viewed by a person of ordinary intelligence, care and diligence." *Stevens* v. *Insurance Co.*, 84 N. H. 275, 279. The plaintiff's superintendent instructed its engineer to obtain a bulldozer to move the ore lengthwise of the building "as we had previously done." Bulldozers had been used on previous occasions, although it does not appear that the defendant made any inquiry concerning this fact or had any knowledge of it. The use of bulldozers on stated occasions when there was a breakdown in machinery would appear from the record to be a normal although temporary incident of plaintiff's manufacturing business. The evidence justified the referee's finding that "the use of the bulldozer in the plaintiff's storehouse did not substantially increase the risk so as to avoid the policies and deprive the plaintiff of their protection."

Since this was a question of fact (*LaCourse* v. *Insurance Co.*, 90 N. H. 424) and there is evidence to support it, it cannot be said as a matter of law that there was an increase of the risk. Cf. *Moore* v. *Insurance Co.*, 64 N. H. 140.

The policy expressly excludes coverage if at the time of the casualty the bulldozer operator was the plaintiff's employee. In view of this exclusion, it becomes necessary to determine the status of the driver at the time the loss occurred. Was he the plaintiff's borrowed servant or did he remain the servant of his general employer, Whitcomb, Inc.? The operator could be found to be the servant of the plaintiff although he continues to be the general servant of Whitcomb Co. and was paid by them for his work. *Indemnity Ins. Co.* v. *Cannon*, 94 N. H. 319; *Manock* v. *Company*, 86 N. H. 104. The referee found as a fact that the operator "was not an agent, or an employee or a loaned servant of the plaintiff."

In considering whether this was a permissible finding, reference must be made to other evidence in the record. Although moving the ore crosswise of the building caused the damage, it is significant that "about 100% of the job was completed of moving the ore from the north end of the building towards the south end," which was lengthwise of the building. This work had been previously done by Whitcomb Co. and its general superintendent had inspected the premises and understood that "no ore should be moved from side to side or crossways of the building." The only instruction given the operator was by a common laborer employee of the plaintiff who said "start in through the hole there." That witness testified on cross-examination in answer to the question whether the operator was distributing the ore in the right place: "It was nothing to me. I wasn't the man taking charge of it. I was standing around there as a helper." The operator had no other conversation or instructions from the plaintiff or his agents.

Whether the operator of the bulldozer was an employee of the plaintiff cannot be determined by any single factor. The Restatement of the Law of Agency, *s.* 227, *comment* c. contains the following summary: "Factors to be considered. A continuation of the general employment is indicated by the facts that the general employer may at any time substitute another servant, that the time of employment is short, and that the lent servant has the skill of a specialist.

"A continuance of the general employment is also indicated in the operation of a machine where the general employer rents the machine and a servant to operate it, particularly if the instrumentality is of

considerable value. Normally, the general employer expects the employee to protect his interests in the use of the instrumentality and these may be divergent from the interests of the temporary employer. If the servant is expected only to give results called for by the temporary employer and to use the instrumentality as the servant would expect his general employer would desire, the original service continues. Upon this question, the fact that the general employer is in the business of renting machines and men is relevant, since in such case there is more likely to be an intent to retain control over the instrumentality. A person who is not in such business and who, gratuitously or not, as a matter not within his general business enterprise permits his servant and instrumentality to assist another, is more apt to intend to surrender control."

The evidence discloses that the operation was a relatively short one, the operator was a skilled specialist, the bulldozer was of considerable value; that another operator could have been substituted and that the operator was not to take any action that was dangerous to himself or to the vehicle. These considerations and factors justified the finding of the master that the operator was not an employee of the plaintiff. *Balcus* v. *Sterling Express Co.,* 94 N. H. 270, 272; *Standard &c. Insurance Co.* v. *Swift,* 92 N. H. 364.

Error is claimed in the refusal of the referee to grant various requests of the defendant designed for the most part to show that the right to control, direct and supervise the moving of the ore rested entirely with the plaintiff. This refusal is said to be inconsistent with findings already made by the referee. The referee refused to adopt certain language of the requests. While it appears that the language was proper and not necessarily indefinite, the referee was not obliged to adopt the phraseology of the defendant's requests. *Lynch* v. *Sprague,* 95 N. H. 485. The alleged inconsistency between the master's original report and the granting of certain requests made by the defendant are explained by the referee's amended finding. "The referee finds, on all the evidence, that the plaintiff was entitled to tell the operator of the bulldozer where to place the feldspar but not how to move it or how to run his machine, and if the operator thought that what he was asked to do would be likely to damage the bulldozer or injure himself, he could take his machine off the job.

"In considering the various requests designed to show the relation between the plaintiff and the operator of the bulldozer, the referee has not intended to depart from this finding of fact." Considering all the

evidence and the amended report of the referee in connection with the original report, there appears to be no inconsistency therein. Neither do we find any part of the referee's report unsupported by the record.

*Judgment for the plaintiff in the agreed amount of $3,033.47.*

All concurred.