H. R. WEISSBERG CORPORATION ET AL. *v.* NEW YORK UNDERWRITERS INSURANCE COMPANY ET AL.

[No. 223, September Term, 1970.]

*Decided January 13, 1971.*

The cause was argued before HAMMOND, C. J., and McWILLIAMS, FINAN, SMITH and DIGGES, JJ.

*William L. Clark,* with whom were *Walter R. Tabler, F. Duncan Cornell* and *Hooper, Kiefer, Sachs, Tabler & Cornell* on the brief, for appellants.

*George M. Radcliffe,* with whom was *Edgar H. Gans* on the brief, for appellees.

SMITH, J., delivered the opinion of the Court.

We are here obliged to decide whether damage which arose when the boom of a mobile crane struck the Lord Baltimore Hotel in Baltimore came within the purview of an extended coverage endorsement to fire insurance

policies which provided indemnity for "direct loss by * * * Vehicles * * *". The crane was engaged in demolition work when its boom twisted, buckled, and fell. We conclude that the damage did come within the policy provisions. Therefore, we shall be obliged to reverse the judgment entered by a trial judge who arrived at a contrary conclusion.

This litigation could be called a by-product of the extensive rebuilding in recent years of the downtown Baltimore area. The facts are not in dispute. In fact, the matter was decided in the trial court on a motion for summary judgment. The parties made commendable use of Maryland Rule 421 concerning admission of relevant facts, a tool many attorneys seem to overlook.

The crane in question was engaged on the morning of January 7, 1964, in the demolition of the Hamburger building on Hanover Street, directly across from the Lord Baltimore Hotel (the Hotel). The Hamburger building was eight floors high. This work had brought the building down to the fourth floor. As the crane operator put it:

> "I was claming debris off the fourth floor level of the building, the boom angle was approximately 70 degrees to 80 degrees. The clam of the crane was resting on the fourth floor and full of debris, it was not hooked to anything which was still attached to the building. As I started to lift the bucket clam, I heard a noise like a sharp crack or snap. I looked up at the boom and saw that the third section of boom about 55 ft. up was buckled and the boom had started to come back over towards the cab. I locked the swing lock on the crane to keep the crane from swinging around and jumped out of the crane. The boom twisted and slewed around."

No portion of the crane other than the boom came into contact with the Hotel.

The crane contained two engines. One engine could be used for the purpose of driving the entire unit laterally

along the ground in the same fashion that a truck is driven along the ground; this engine could not operate the boom. The other engine was used for the purpose of operating the boom of the crane; it could not be used to propel the crane along the ground. This latter engine or "boom engine" was the one in operation at the time of the accident. The engine which would have moved the crane laterally was not in operation.

Outriggers attached to the crane supported or stabilized it while the boom assembly was being operated in the demolition of buildings. At the time of this incident the crane was stabilized by these outriggers which were in contact with the ground. When the outriggers are so placed, it is not possible to move the crane along the ground. The boom assembly could be disconnected from the truck-crane unit. The crane was capable of utilizing booms of varying sizes and lengths.

Various insurance companies had issued policies on the 1943 Standard Fire Insurance form to Lord Baltimore Hotel, Inc., the operator of the Hotel, and its parent company, H. R. Weissberg Corporation. Attached to these policies were endorsements containing the following pertinent language:

"Subject to provisions and stipulations (hereinafter referred to as 'provisions') herein and in the policy to which this Endorsement is attached, including endorsements thereon, the coverage of this policy is extended to include direct loss by * * * Vehicles * * *.

\* \* \*

"Provisions Applicable Only to Loss by Aircraft and Vehicles: The term 'vehicles', as used in this Endorsement, means vehicles running on land or tracks but not aircraft. Loss * * * by vehicles shall include only direct loss resulting from actual physical contact of * * * a vehicle with the property covered hereunder or with the building containing the property covered hereunder * * *."

There is no shortage of cases defining the word "vehicle". *See,* for instance, 91 C.J.S. *Vehicle* at 805-807 (1955), and 44 Words and Phrases "Vehicle" at 145-159 (1962). The cases include our own *Balto. Transit Co. v. MTA,* 232 Md. 509, 517, 194 A. 2d 643 (1963). The Court was there called upon to determine with reference to a seat tax the meaning of the phrase "per vehicle used by mass transit or transportation company". In an opinion by Judge (later Chief Judge) Prescott the meaning of the phrase was held not ambiguous and it was determined, "[T]he word 'vehicle' therein must be construed as having been used in its general sense so as to include streetcars."

Definitions include the interesting comment of Mr. Justice McReynolds in *United States v. One Ford Coach,* 307 U. S. 219, 59 S. Ct. 861, 83 L. Ed. 1249 (1939), relative to forfeiture of a vehicle under the revenue laws because of unlawful transportation of distilled spirits upon which the federal tax had not been paid. He there said by way of dicta:

> "It should be observed that the following things are possible subjects of seizure and forfeiture because of liquor law violations: 'Every vessel, boat, cart, carriage, or other conveyance whatsoever, and all horses or other animals, and all things used in the removal or for the deposit or concealment, etc.' 'Vehicle' is thus defined— 'That in or on which a person or thing is or may be carried from one place to another.' A wheelbarrow, a covered wagon, a 'Rolls-Royce,' the patient mule, a 'Man of War,' and possibly a Pullman car or Ocean Liner is a vehicle. *Goldsmith-Grant Co. v. United States,* 254 U. S. 505; *United States v. Two Bay Mules* [36 F. 84 (W.D. N.C. 1888)]; *United States v. One Bay Horse* [270 F. 590 (N.D. Ga. 1921)]." *Id.* at 237 of 307 U. S.

Interestingly enough, Mr. Justice McReynolds dissented

(without opinion) in *Goldsmith-Grant Co. v. United States,* 254 U. S. 505 (1921), to which he made reference. In that case as to a contention that under the statute there involved:

> "[A] Pullman sleeper can be forfeited if a bottle of illicit liquor be taken upon it by a passenger, and * * * an ocean steamer can be condemned to confiscation if a package of like liquor be innocently received and transported by it." *Id.* at 512.

the Court said, "When such application shall be made it will be time enough to pronounce upon it."

The insurance companies and the trial judge found persuasive *Smedley v. Milwaukee Automobile Insurance Co.,* 12 Wis. 2d 460, 107 N.W.2d 625 (1961). In that case the court was called upon to interpret a Wisconsin direct action statute under which an insurance company might be "made a proper party defendant" in any action caused by "the negligent operation, management or control of a motor vehicle". It was claimed that the defendant was negligent "in failing to properly manage and control the crane he was operating in respect to swinging the girder up unexpectedly, in swinging the girder too close to the plaintiff, in slackening the boom line, in allowing the girder to crash on the wall, and in failing to obey signals directing the movement of the crane". The court said:

> "These are not the usual allegations for the operation, management or control of a motor vehicle but would be sufficient if in fact the crane was a motor vehicle." *Id.* at 466.

In holding that the crane was not a motor vehicle under that statute, the court said:

> "It is undoubtedly true if the unit were being driven on a public street for the purposes of locomotion, it would be considered a motor vehicle. In the record there are several photo-

graphs and a lithograph of this unit. Arbitrarily classifying it either as a truck or a hydrocrane without reference to a particular use does not solve the problem. When the unit is in locomotion for the purpose of transporting the crane, it takes on the essential aspects of a motor vehicle for some purposes. However, after the unit arrives at its destination, the mobile aspect ceases and the crane is operated as an independent immobile unit. The test under the statutes is whether at the time of the accident the unit is being used, managed, controlled or operated as a motor vehicle in the ordinary meaning of those words. At the time of the accident the unit was stationary, the crane was stabilized, supported and rendered immobile by outriggers. The unit was not then used as a motor vehicle. Plaintiff was injured by the operation of the crane, not the operation of the truck. We do not believe such use of the unit is within the meaning of the *negligent operation, management or control of a motor vehicle as used in sec. 260.11, Stats."* *Id.* at 466-67. (Emphasis added.)

We regard the emphasized words as the critical difference between *Smedley* and this case.

The numerous other cases which have construed the term "vehicle" have involved workmen's compensation statutes, motor vehicle fuel taxes, automobile liability policies and zoning ordinances, to mention but a few. All are distinguishable from this case. In the light of the number of those cases and the undoubtedly vast numbers of insurance policies issued with language similar to that here involved, it is remarkable that there are but a handful of cases construing policy provisions similar to these. No case has been cited to us nor have we been able to locate a case involving similar facts. The following cases constitute that handful.

In *Golding-Keene Co. v. Insurance Company*, 96 N. H.

64, 69 A. 2d 856, 12 A.L.R.2d 591 (1949), the east wall of a building was demolished when feldspar was pushed against it by a "bulldozer, a self-propelled machine operating on caterpillar tracks, [which] was usually transported by trailer from job to job but [which] was capable of being used and was in fact used 'on a dirt road'". The bulldozer was held to be a vehicle within the policy.

In *George v. Miss. Farm Bureau Mut. Ins.*, 250 Miss. 847, 168 So. 2d 530 (1964), a bulldozer pushed loose material into a cut in front of a building. The bulldozer came within six or eight inches of the structure during the operation, but there was no direct contact between bulldozer and building. The operator of the bulldozer noticed a crack in the building upon completion of his work. Overnight the building collapsed as the result of the weight of the loose material pushed into the ditch and against it by the bulldozer. The court said:

> "It is our opinion and we so hold the language used in this exclusionary clause is so clear and unambiguous that it must be construed as requiring an actual contact — touching — of the building by the vehicle before there could be recovery under this clause of the insurance contract. There being no actual physical contact, the lower court was correct in directing a verdict for the defendant." *Id.* at 851-52.

In *Habaz v. Employers' Fire Insurance Company*, 243 F. 2d 784, 64 A.L.R.2d 1184 (8th Cir. 1957), flood waters propelled a parked car against the insured's premises and the car caused the flood water to be diverted into the insured's store. The court held there was no liability since the proximate cause of the damage was the flood and not the vehicle.

In *Miller v. Boston Insurance Company*, 271 F. 2d 9 (5th Cir. 1959), a bulldozer pushed dirt against a foundation wall but never came into physical contact with that wall. The court did not make a determination as to whether the bulldozer was a vehicle. It held the trial court

was correct in directing a verdict for the defendant because there was no proof as to what caused the wall to cave in and there was no actual physical contact between the bulldozer and the wall or any part of the building. It then made the further observation:

> "We are constrained to the conclusion also that appellant would not be entitled to recover even if we should construe the words of the policy in accordance with his most extreme position, i.e., that the word 'vehicle' should be interpreted to mean not only the vehicle itself, but anything it was transporting or which was being moved by it. This is so, because the evidence is not sufficient to make out a case for jury decision that the wall collapsed because of the movement of the front end loader." *Id.* at 11-12.

In *Vowinckel v. Donegal Mutual Insurance Company,* 201 Pa. Super. 229, 191 A. 2d 706 (1963), a jeep fell from a floor jack in a garage and struck a motor tester. A demurrer was filed. The contention was made that the facts did not come within the extended coverage provision of the policy because the vehicle at the time was not "running on land or tracks". The court said:

> "We conclude that when the policy says that 'vehicles * * * mean vehicles running on land or tracks', it intends by this to describe the kind of vehicle which runs on land or tracks and that under the next sentence in the policy the plaintiff is insured against damage to the contents of his garage by physical contact with such a vehicle. Whether or not this unusual type of accident was contemplated by the insurance company when it drew the policy, it has not definitely excluded it. An automobile does not cease to be a vehicle in any ordinary sense when it is brought into a garage and jacked up for repairs. Certainly a truck full of merchandise be-

ing transported which has some difficulty on the road and is brought into a garage for repairs and jacked up is a vehicle. To exclude coverage for damage from such a vehicle falling from the jack would require clearer language than that which appears in this policy." *Id.* at 236.

It thus will be seen that little help is derived from decisions of other courts since they do not involve this precise point. Accordingly, we are obliged to look to the rules summarized by Judge Singley for the Court in *Gov't Employees Insur. v. DeJames*, 256 Md. 717, 261 A. 2d 747 (1970):

"It is well settled that in interpreting insurance contracts, words are to be given their customary and normal meaning. *State Farm Mut. Auto Ins. Co. v. Treas*, 254 Md. 615, 255 A. 2d 296 (1969); *American Home Assurance Co. v. Erie Ins. Exchange*, 252 Md. 116, 248 A. 2d 887 (1969); *Offutt v. Liberty Mut. Ins. Co.*, 251 Md. 262, 247 A. 2d 272 (1968); *Harleysville Mut. Cas. Co. v. Harris & Brooks, Inc.*, 248 Md. 148, 151, 235 A. 2d 556 (1967), and cases there cited. Absent ambiguity the construction of the contract remains within the province of the court and Maryland has not adopted the rule, followed in many jurisdictions, that an insurance policy is to be most strongly construed against the insurer, *American Cas. Co. v. Aetna Cas. & Surety Co.*, 251 Md. 677, 248 A. 2d 487 (1968); *Mateer v. Reliance Ins. Co.*, 247 Md. 643, 233 A. 2d 797 (1967); *Ebert v. Millers Mut. Fire Ins. Co.*, 220 Md. 602, 155 A. 2d 484 (1959). If the language of an insurance contract is ambiguous, however, construction is for the jury, *Ebert v. Millers Mut. Fire Ins. Co.*, *supra*, 220 Md. at 610. *Eagle Star & British Dominions Ins. Co. v. Fleischman*, 175 Md. 433, 2 A. 2d 424 (1938); 22 Appleman, *Insurance Law and Practice* §

12853 (1947) at 7, and the ambiguity is to be resolved against the company which prepared the policy and in favor of the insured, *American Cas. Co. v. Aetna Cas. & Surety Co., supra,* 251 Md. at 684; *Allstate Ins. Co. v. Humphrey,* 246 Md. 492, 496, 229 A. 2d 70 (1967)." *Id.* at 720.

Appellee insurance companies argue:

"(1) The damage to the Appellants' hotel was caused by the unexplained structural failure and buckling of the boom of the crane, which event did not legally constitute a 'direct loss' by a 'vehicle' under the policies.

"(2) At the time of the incident in question, the crane was not 'running on land or tracks' as required by the Endorsements, nor was there any 'actual physical contact' by and between the truck-crane itself and Appellants' hotel.

"(3) In any event, the truck-crane at the time of the incident was not a 'vehicle' under the terms of the policy; said truck being stabilized on outriggers, not being capable of lateral movement and being operated as a separate machine at the time of the incident."

It is undisputed that the Hotel sustained damage as a direct result of contact between the boom and the building. That boom was an appendage of the crane. It was just as much a part of the crane as the bumper of an automobile or the tongue of a wagon. To exclude this loss because contact was only with the boom would be similar to excluding loss caused if a tractor-trailer loaded with piling "jackknifed" and the projecting piling, but not the trailer, damaged a building. The difference is simply one of degree.

As to the contention that there was no liability because "the crane was not 'running on land or tracks' as required by the endorsements", we find persuasive the language in

*Vowinckel* that the policy intended to describe the *kind* of vehicle which runs on land or tracks. It may be that the reason for the language relative to running on land or tracks was to exclude certain of the items Mr. Justice McReynolds in *One Ford Coach* mentioned as being vehicles, such as an ocean liner or "the patient mule". In *Vowinckel* the court said:

> "These cases, and the highly respected lexicographers upon whom they rely, indicate that the fact that the present participles, 'running' or 'moving', literally denoting a state of being in motion, are commonly used by the highest authorities in defining the word 'vehicles', when a purist might well insist on the use of some phrase such as 'capable of running or moving'. This makes clear that the use of the word 'running' rather than a clause such as 'which runs' or a phrase such as 'capable of running' is not a sufficient reason for holding that the clause defining 'vehicle' is intended, not merely to define that word, but to describe the event which is insured against. It indeed suggests that the sentence in question was adapted from one of these dictionary definitions of the word 'vehicle'. Particularly is this so in a policy such as the one before us, when the definition clause is followed immediately by another sentence covering the event insured against, to wit, physical contact with the vehicle." *Id.* at 233-34.

Relative to appellee's final argument, we point out this crane is self-propelled. If while propelling itself from one part of the Hamburger lot to another it had for some reason toppled over so that its boom struck and destroyed the marquee of the Hotel, we would have no difficulty in concluding that the Hotel had sustained a direct loss by a vehicle from actual physical contact with that vehicle while it was running on land. Accordingly, the question here is whether the crane lost its identity as a vehicle when its outriggers were placed in position.

A vehicle was defined in Code (1957), Art. 66½, § 2 (a) (67) as:

"Every device in, upon, or by which any person or property is or may be transported or drawn upon a highway, excepting devices used exclusively upon stationary rails or tracks or propelled by electric power obtained from overhead trolley wires, but not operated upon rails or tracks."

Code (1970 Repl. Vol.), Art. 66½, § 1-209, as enacted by Chapter 535 of the Acts of 1970, effective January 1, 1971, defines a vehicle as "every device in, upon, or by which any person or property is or may be transported or drawn upon a highway". Both definitions are consistent with a holding here that this crane was a vehicle.

We observed in *Offutt v. Liberty Mut. Ins. Co.*, 251 Md. 262, 270, 247 A. 2d 272 (1968), "We may not make a new contract under guise of construction." Unlike *Smedley*, the requirement here is not that the loss arise from the "negligent operation, management or control of a motor vehicle", but that it be "direct loss by * * * Vehicles", and that it "[result] from actual physical contact of * * * a vehicle with the property covered [under the policies]". The insurance companies have not seen fit to exclude the particular type of incident here involved. They have not restricted the loss to a situation where the vehicle was at that time being used as a vehicle. Giving the words of the insurance policy "their customary and normal meaning", it can not be clearly and definitely said that the parties intended that damage resulting from contact with a vehicle, which the crane was, should be restricted to an incident in which the vehicle was moving or otherwise in use as a vehicle. Therefore, under our prior holdings, any ambiguity is to be resolved against the company which prepared the policy and in favor of the insured. Accordingly, judgment should be entered against the insurance companies for the damage sustained.

This record is complicated by the fact that the Hotel's

parent is in bankruptcy and the building has been sold at foreclosure sale, being now in other hands. It does not appear from the pleadings in this case how or to what extent the agreed upon damages might be apportioned between H. R. Weissberg Corporation and Lord Baltimore Hotel, Inc., as lessee. Accordingly, we shall remand the case for further proceedings.

> *Judgment reversed; case remanded for further proceedings in accordance with this opinion; costs to be paid by appellees.*