The NORTH RIVER INSURANCE
COMPANY, Appellant,

v.

Donald POMERANTZ et al., Appellees.

No. 714.

Court of Civil Appeals of Texas,
Houston (14th Dist.).

March 7, 1973.

Rehearing Denied April 4, 1973.

Tom Alexander, Robert C. Floyd, Donald B. McFall, Butler, Binion, Rice, Cook & Knapp, Houston, for appellant.

Sidney Ravkind, Mandell & Wright, Houston, for appellees.

COULSON, Justice.

This is a suit by Donald Pomerantz and Melvin Pomerantz, appellees here and

plaintiffs in the trial court, on an insurance policy issued by the North River Insurance Company, appellant here and defendant in the trial court, to recover for property damage, occurring on July 26, 1969, to appellees' apartment units located in Houston, Texas. The claim arose from an incident in which a backhoe tractor was being used to dig a ditch to lay a replacement sewer line on appellees' property. While engaged in this digging operation, the bucket of the backhoe allegedly came in contact with an underground conduit containing electrical cables furnishing electrical power to appellees' property. A short circuit resulted and damaged the wiring system of appellees' property. Appellees notified the insurance agent that this mishap had occurred and sought payment under a provision of the policy insuring against direct loss resulting from "land vehicles". Appellant, the North River Insurance Company, denied appellees' claim on the basis that the backhoe involved was not operating as a "land vehicle" at the time of this occurrence and that there was no "direct" loss within the meaning of the policy. The latter contention was based on the insurer's contention that the backhoe did not actually touch the underground conduit or the electrical lines therein. Although appellee Donald Pomerantz discussed this claim with agents of appellant on two occasions within 91 days after the loss occurred, no sworn proof of loss was submitted to appellant within the 91 day period as required by the policy.

After appellant's failure to pay appellees' claim, appellees, on December 26, 1969, brought suit on the insurance contract. Trial was to a jury which found (1) that appellant, The North River Insurance Company, had through its duly authorized agents unconditionally denied appellees' claim within 91 days of the loss; (2) that the damages incurred were caused by the operation of a land vehicle; and (3) that the cost of repairing the damage to the insured premises was $3,778.25. Judgment for plaintiff was entered based on the jury's verdict and the defendant insurance company has duly perfected its appeal.

In its first two points of error appellant complains of the submission of and answer to Special Issue No. 1 which inquired whether appellant's authorized agents had denied appellees' claim under the policy. These points of error encompass no evidence, insufficient evidence and great weight grounds. An affirmative finding on this issue was vital to appellees' right to bring suit on the policy since, as previously noted, no sworn proof of loss was ever given to the insurer. A denial of liability by the insurance company within the period allowed for filing proof of loss, on grounds other than the failure to submit proof of loss, constitutes a waiver of this requirement. Sun Mut. Ins. Co. v. Mattingly, 77 Tex. 162, 13 S.W. 1016 (1890); Sanders v. Aetna Life Ins. Co., 146 Tex. 169, 205 S.W.2d 43 (1947). We have carefully examined the Statement of Facts and exhibits in this case and have concluded that although the evidence is somewhat conflicting, there is sufficient evidence to support the jury's finding that appellees' claim was denied within 91 days after the occurrence of the loss. Such finding is not against the overwhelming weight and preponderance of the evidence.

The testimony of appellee Donald Pomerantz indicates that one month after the loss occurred he met with a line adjuster from the San Antonio office of Floyd West & Company. It was stipulated that this company is the general agent of appellant, The North River Insurance Company. The line adjuster informed Mr. Pomerantz that the claim was being denied on the ground that it was not within the coverage of the policy. Other testimony indicates that the line adjuster had authority to convey such information to claimants. The insurance agent corroborated appellees' testimony that liability was denied by the line adjuster. Testimony of three persons, first, appellee, second, the insurance agent and, third, the claims manager for Floyd West & Company in Houston, establishes

that the denial of liability was reaffirmed by the Houston claims manager within the 91 day period after loss. There was, however, some inconsistency in the evidence as to the exact date on which this took place.

■ Evidence was admitted which tended to show that counsel for the insurance company may have been still considering the validity of appellees' claim after the termination of the 91 day period for filing the proof of loss. Appellant contends that whatever denial of liability was made before the lapse of the 91 days was therefore not "unconditional" and thus not a waiver of the policy provision. First, we hold that this evidence does not amount to such an overwhelming preponderance of the evidence as to make the jury's finding clearly wrong. Secondly, from an examination of the cases, we can not say that an *unconditional* denial of liability is necessary to constitute a waiver. The important characteristic of the denial is shown by the language of the Supreme Court of Texas in Scottish Union & Nat. Ins. Co. v. Clancey, 83 Tex. 113, 18 S.W. 439, 440–441 (1892):

> "It is a well-known principle in this class of cases that the acts relied on as constituting a waiver should be such as are reasonably calculated to make the assured believe that a compliance on his part with the stipulations providing the mode of proof of loss, and regulating the appraisement of the damage done, is not desired, and that it would be of no effect if observed by him."

We think the evidence of denial in the instant case is sufficient to meet that standard. The claims manager from Floyd West & Company indicated that he had received all the information he needed for proof of loss. Only the formality of a sworn statement was missing. Under these circumstances we do not find it of any consequence whether the insurance company informs the insured that the claim *absolutely* will not be paid or simply indicates that it is not planning to pay the claim unless some new development arises. It is

enough that the actions of the insurance company are such as would reasonably lead the insured to believe that the company is not going to pay the claim because of some reason other than failure to file the required proof of loss. Appellant's first two points of error are overruled.

In its third and fourth points of error, appellant attacks the submission of and answer to Special Issue No. 2 which inquired if the damage to the insured property was caused by the operation of a "land vehicle". Again the grounds of attack are no evidence, insufficient evidence and that the jury's answer is against the weight of the evidence. Grouped with these points in appellant's brief is its fifth point of error which complains of the trial court's failure to give appellant's requested instruction defining the term "land vehicle". The requested instruction reads as follows:

> "You are instructed that a 'land vehicle' is a vehicle which during its use moves over the land and is not stationery (sic) machinery or equipment."

As we construe the argument under these three points of error, the primary question presented concerns the proper construction of the term "land vehicle" as used in the contract of insurance. The term is not defined in the policy.

First it should be noted that Special Issue No. 2 might have been validly attacked on the ground that it required the jury, in answering only one issue, to determine whether the backhoe caused the damage to plaintiffs' property as well as whether the backhoe was a land vehicle within the meaning of the policy language. It is probable that the issue was multifarious if both these inquiries were questions of fact for the jury. Moreover, it could have been properly contended that the question of whether the backhoe was a "land vehicle" within the meaning of the policy language was not a question of fact for the jury at all, but rather a question of contract language construction to be determined by the court as a matter of law. If so, the only

question the jury had to answer was whether the operation of the backhoe in fact caused the damage to the insured premises. We think the evidence is sufficient to support the jury's affirmative finding in that regard.

■ We now proceed to consider whether a backhoe is a "land vehicle" within the meaning of the language of the policy. As demonstrated by the wording of the requested instruction quoted above, it is appellant's contention that it is the *use* of the vehicle at the time of its involvement in an incident that is the controlling consideration as to whether or not the machine is a "land vehicle". Although we would agree that this may be true in cases where the instrumentality involved is not ordinarily used or capable of being used as a means of transportation on land, we do not think that "use" is controlling in a case such as the instant case in which the machine has all the characteristics of a "land vehicle" except for its use at the time of the incident.

The backhoe involved in this case is described in the evidence as a Ford tractor with a backhoe attachment on the rear. The attachment is an hydraulically operated digging mechanism capable of digging a ditch approximately twelve feet deep. The tractor can be (and was in this instance) driven to the job site where it is positioned on the ground through which the excavation is to be made. Once in position, hydraulically operated braces on either side of the tractor are lowered to the ground and the tractor's wheels are elevated so that the tractor becomes stationary. Further stability is provided by lowering the "front bucket" to the ground. The tractor is moved periodically throughout the ditching operation, with the hydraulic braces and front bucket being raised and lowered each time in order that the tractor can be driven forward. A time period of approximately two seconds is required to raise or lower the braces, making the tractor mobile or immobile.

We are unaware of any case decided in this jurisdiction which speaks directly to the question presented to this Court, e. g., whether a tractor, an instrumentality which might ordinarily be thought of as a land vehicle when traveling on the open road, ceases to be such when it becomes stationary for a short period of time while engaging in an activity quite removed from the transportation of persons or property on land. Both Davis v. National Casualty Co., 142 Tex. 29, 175 S.W.2d 957 (1943) and Commercial Standard Ins. Co. v. McKinney, 114 S.W.2d 338 (Tex.Civ.App.— Beaumont 1938, writ dism'd) are distinguishable from the case at bar. In each of these cases the "vehicles" involved (a road scarifier drawn by a caterpillar tractor and a tractor pulling an oil derrick on unattached rollers) were moving over the ground at the time of the incident. Thus it could be said that the vehicles, regardless of their primary use, were being used at the time to transport persons or property on land. Both of these cases, however, lend support to the view that the term "vehicle" when used without definition in an insurance contract can be construed quite broadly and still be "within the ordinary meaning of the word." Davis v. National Casualty Co., supra.

We hold that the backhoe tractor in the instant case is a "land vehicle" as the term is used in the insurance contract. As stated in Davis v. National Casualty Co., 142 Tex. 29, 35, 175 S.W.2d 957, 960 (1943):

"If it may be said that the language of the policy, which was selected by the insurer, is in its use of the word 'vehicle' ambiguous or of uncertain meaning, it is at least fairly susceptible of the construction that we have given it and that construction should be adopted because it is favorable to the insured. Brown v. Palatine Insurance Co., 89 Tex. 590, 35 S.W. 1060; McCaleb v. Continental Casualty Co., 132 Tex. 65, 116 S.W.2d 679; United Service Automobile Association v. Miles, 139 Tex. 138, 161 S.W.2d 1048."

Several cases from other jurisdictions as well as one Texas case support our construction of the term. The case perhaps most directly in point is H. R. Weissberg Corp. v. New York Under. Ins. Co., 260 Md. 417, 272 A.2d 366 (1971). In that case the boom on a crane engaged in demolition work buckled and fell against a building causing extensive damage. At the time of this incident, the self-propelled crane was stabilized on the ground by outriggers, thus making the crane immobile. The insurance policy involved provided indemnity for "direct loss by . . . Vehicles . . .". The Court of Appeals of Maryland, in holding that the crane did come within the policy provision, had this to say:

> "Relative to appellee's final argument, we point out this crane is self-propelled. If while propelling itself from one part of the Hamburger lot to another it had for some reason toppled over so that its boom struck and destroyed the marquee of the Hotel, we would have no difficulty in concluding that the Hotel had sustained a direct loss by a vehicle from actual physical contact with that vehicle while it was running on land. Accordingly, the question here is whether the crane lost its identity as a vehicle when its outriggers were placed in position.
>
> .    .    .    .    .    .
>
> "The insurance companies have not seen fit to exclude the particular type of incident here involved. They have not restricted the loss to a situation where the vehicle was at that time being used as a vehicle. Giving the words of the insurance policy 'their customary and normal meaning', it can not be clearly and definitely said that the parties intended that damage resulting from contact with a vehicle, which the crane was, should be restricted to an incident in which the vehicle was moving or otherwise in use as a vehicle. Therefore, under our prior holdings, any ambiguity is to be resolved against the company which prepared the policy and in favor of the insured. Ac-

cordingly, judgment should be entered against the insurance companies for the damage sustained."

272 A.2d at 371, 372. A somewhat similar view was expressed in Rullman v. State Farm Mutual Automobile Ins. Co., 8 Cal. App.3d 606, 87 Cal.Rptr. 551 (1970). Although the result of that case turned on an exclusion contained in an automobile insurance policy, the Court did consider a truck with a drilling rig mounted on it to be a land motor vehicle within the policy's definition of an automobile. At the time of the incident the truck was being used in a drilling operation. See also Foster v. United Equitable Insurance Company, 204 So.2d 659 (La.Ct.App.1967) in which it was said that a truck was still a truck within the meaning of a policy provision even though it was equipped with an attachment used for loading logs and was engaged in such operation at the time of the accident. A like holding appears in Combined American Insurance Company v. Ganzer, 350 S.W.2d 211 (Tex.Civ.App.— Waco 1961, no writ) which involved a "mobile truck-crane". The Court held that the additional equipment on the truck did not transform it into something other than a truck. We are familiar with the holding in Vincent v. Taylor Bros., 180 App.Div. 818, 168 N.Y.S. 287 (1917) but decline to follow it as we consider the view taken in the other cases to be the better reasoned approach. Appellant's third, fourth and fifth points of error are overruled.

■ In its points of error 6 and 7, appellant complains of the submission of and answer to Special Issue No. 3, which inquired about the reasonable cost of repairing the damage to the insured premises located at 3631, 3633, 3635, 3641, and 3643 North McGregor, Houston, Texas, to which special issue the jury found the sum of $3,778.25. These points of error encompass no evidence, insufficient evidence and great weight grounds. Point of error 8, as an alternative, asserts that the damages found by the jury were excessive and appellant requests a remittitur of $3,036.18.

The Statement of Facts and exhibits in this case reflect evidence sufficient to support the jury's finding that all of the repairs were made to the insured premises and the jury's finding is not against the overwhelming weight and preponderance of the evidence. The witness W. C. Hagerman, who performed the electrical repairs, testified that there was no damage to the small rental office at 3645 North McGregor, which small rental office was not listed in the insurance policy; that the exact repairs made were to the feeder system to the apartment complex, which apartment buildings were listed in the insurance policy; and that the invoice in the sum of $3,036.18 was issued for repair work performed by Hagerman on the apartment units. The appellant's points of error 6, 7 and 8 are overruled.

The judgment of the trial court is affirmed.