STATE OF MAINE
YORK, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-09-370

MARK COOKSON,

Plaintiff

v.                                              ORDER

LIBERTY MUTUAL FIRE
INSURANCE COMPANY,

Defendant

Plaintiff Mark Cookson brought this action seeking a declaration that his homeowner's insurance policies provide coverage for the full replacement price of a Case 590M tractor that he lost in a fire. Defendant Liberty Mutual Fire Insurance Company now moves for summary judgment. Following hearing, the Defendant's Motion will be Granted.

## BACKGROUND

Mr. Cookson owns a home at 457 Libby Road in West Newfield, Maine, and property at 743 Sanborn Road in Acton, Maine. (Pl.'s Add'l S.M.F. ¶¶2, 17–18.) He purchased the home at 457 Libby Road in 2004, and it was his primary residence at all times relevant to this action. (Pl.'s Add'l S.M.F. ¶¶2–3.) He was given the land on Sanborn Road as a gift in 2005, and he began to construct a home on it in 2006. (Pl.'s Add'l S.M.F. ¶¶17, 19.) Defendant Liberty Mutual Fire Insurance Company insured both properties under policies that are identical in all ways material to this action. (Supp. S.M.F. ¶¶20–25; Pl.'s Add'l S.M.F. ¶¶4, 11–16, 28–34.)

In 2005, Mr. Cookson purchased a used tractor for approximately $27,000. (Supp. S.M.F. ¶9; Pl.'s Add'l S.M.F. ¶7.) The tractor was a Case 590M with a front bucket and a backhoe attachment. (Pl.'s Add'l S.M.F. ¶7.) It was capable of reaching a top speed of 25 m.p.h. and had one seat for the operator. (Pl.'s Add'l S.M.F. ¶8.) Mr. Cookson used the tractor to dig holes, move earth, and plow snow on his own properties. (Pl.'s Add'l S.M.F. ¶8; Cookson Dep. at 8–11.) The tractor was not designed to transport persons or property. (Pl.'s Add'l S.M.F. ¶7; Def.'s Admission 28.) However, Mr. Cookson did transport the tractor itself from one property to another several times by driving it along the public roads. (Supp. S.M.F. ¶17; Pl.'s Add'l S.M.F. ¶27.) Though he never attempted to register the tractor or have it inspected, Mr. Cookson also drove it to his father's house in Acton for repair. (Supp. S.M.F. ¶¶18–19.) The tractor was destroyed in a fire there on December 22, 2007. (Supp. S.M.F. ¶18; Pl.'s Add'l S.M.F. ¶35.)

Mr. Cookson submitted a timely claim for the loss under both policies on December 24, 2007. (Pl.'s Add'l S.M.F. ¶36.) Liberty Mutual retained David Noonan of Cunningham Lindsay U.S., Inc., to:

> a) inspect the insured's tractor and verify if repairable; b) if not repairable, provide replacement cost; c) investigate facts of loss, registration of tractor, business use; d) provide photographs.

(Supp. S.M.F. ¶¶9–10.) Mr. Noonan found that the tractor was a total loss. (Pl.'s Add'l S.M.F. ¶40.) He determined that a new, similar tractor would cost $106,050. (Supp. S.M.F. ¶13; Pl.'s Add'l S.M.F. ¶40.) The actual cash value of Mr. Cookson's tractor was $27,825. (Pl.'s Add'l S.M.F. ¶40.)

In February 2008, Liberty Mutual denied Mr. Cookson's claim. (Pl.'s Add'l S.M.F. ¶42.) Its initial reason for doing so was that Mr. Cookson had been using the tractor at his Acton property, which was not considered a "residence." (Pl.'s Add'l S.M.F. ¶42.) After further investigation, Liberty Mutual reconsidered the claim but denied it on

alternate grounds. (Pl.'s Add'l S.M.F. ¶43; Pl.'s Ex. G.) It wrote that the tractor was a "motorized land conveyance" that had been driven on public roads between West Newfield and Acton, and as such was subject to state vehicle registration requirements. (Pl.'s Add'l S.M.F. ¶43; Pl.'s Ex. G.) The insurance policies only covered vehicles or conveyances not subject to motor vehicle registration that were used to service the insured's residence, and since the tractor was subject to registration requirements it fell out of coverage. (Pl.'s Add'l S.M.F. ¶¶14, 43; Pl.'s Ex. B.)

Mr. Cookson filed his four-count complaint against Liberty Mutual on December 18, 2008. Count I requests a declaration that the loss of his tractor is covered under both his West Newfield and Acton insurance policies. Counts II and III assert unfair claims settlement and breach of contract, respectively. Count IV asserts that Liberty Mutual is estopped from denying coverage under the Acton policy because it knew that the building was under construction before it issued the policy identifying the property as Mr. Cookson's residence address. Liberty Mutual now moves for summary judgment declaring that Mr. Cookson's loss is not covered under the language of the policies.

## DISCUSSION

The meaning of language in an insurance policy is a question of law. *Jipson v. Liberty Mutual Fire Ins. Co.*, 2008 ME 57, ¶10, 942 A.2d 1213, 1216. There are no disputes of material fact, making summary judgment appropriate if either party is entitled to judgment as a matter of law. M.R.Civ.P. 56(c). At issue in this case is whether Mr. Cookson's tractor falls within the motor vehicle exclusion in his homeowner's insurance policies. The policies read in pertinent part:

PROPERTY NOT COVERED

. . . .

3.    Motor vehicles or all other motorized land conveyances. . . .

3

. . . .

> We do cover vehicles or conveyances not subject to motor vehicle registration which are:
>
> a.     Used to service an "insured's" residence . . . .

To resolve the defendant's motion, the court must first determine if Mr. Cookson's tractor is a "motor vehicle or . . . motorized land conveyance" subject to the exclusion. If so, the court must then ascertain whether the tractor is a "vehicle or conveyance[] not subject to motor vehicle registration" within the exception to the exclusion.

The term "vehicle" does not appear to be defined in Mr. Cookson's policies. Generally, a vehicle is any "device, as a motor vehicle or a piece of mechanized equipment, for transporting passengers, goods, or apparatus." Webster's II New College Dictionary 1223 (2001). In addressing whether his tractor is subject to motor vehicle registration, Mr. Cookson notes that Liberty Mutual has admitted that his Case 590M tractor was not designed primarily for the transport of persons or objects. He also directs the court to the case of *N.A. Burkitt Inc. v. Champion Road Machinery Ltd.*, 2000 ME 209, 763 A.2d 106.

In *Burkitt*, the Law Court was required "to interpret the term 'motor vehicle' under the Motor Vehicle Dealers Act." *Id.* ¶5, 763 A.2d at 107. The issue in contention was whether a motor-driven grader was a "motor vehicle" subject to the statute. *Id.* ¶¶2–5, A.2d at 107. The Act specifically defined a "motor vehicle" as: "Any motor driven vehicle, except motorcycles, required to be registered under Title 29-A, ch. 5." *Id.* ¶7, 763 A.2d at 107 (quoting 10 M.R.S.A. §1171(11)). The Court looked to the definition of "vehicle" contained in title 29-A, which states: "Vehicle means any device for conveyance of persons or property on a way." *Id.* ¶8, 763 A.2d at 108 (quoting 29-A

4

M.R.S.A. §101(91)). A "way" is "the entire width between boundary lines of a road, highway, parkway, street or bridge used for vehicular traffic, whether public or private." *Id.* ¶8 n.4, 763 A.2d at 108 n.4 (quoting 29-A M.R.S.A. §101(92)). The Court noted that vehicles are only *required* to be registered "if they are operated or placed on a public way." *Id.* ¶9, 763 A.2d at 108 (citing 29-A M.R.S.A. §351.)

Putting the above definitions together, the Court defined the term "motor vehicle" for the purpose of the Dealers Act to mean:

> Any motor driven device for conveyance of persons or property on a road, highway, parkway, street or bridge used for vehicular traffic, whether public or private, that is operated or remains on a public way.

*Id.* ¶10, 763 A.2d at 108. The Court then concluded that the grader was not a motor vehicle under the Act because it was "more akin to tools or equipments that are used for certain tasks or projects," and that any carriage of persons or property was incidental to its primary function. *Id.* ¶11, 763 A.2d at 108–09. The grader fit more appropriately in a class of "special mobile equipment," defined under title 29-A as "a self-propelled device operated over the highways that is not designed or used primarily for the transportation of persons or property . . . ." *Id.* ¶12 n.8, 763 A.2d at 109 n.8 (quoting 29-A M.R.S.A. §513.)

Mr. Cookson argues that his tractor, with its bucket and backhoe attachments, is like the grader in that it was "generally used in limited areas or at a particularized site, e.g. a construction site," and not used primarily for transportation. *Id.* ¶12, 763 A.2d at 109. Like the grader, it should not be considered a "motor vehicle" because it is simply not a device "for the conveyance of persons or property on a public way, except incidentally as part of road construction, snow plowing, or maintenance work." *Id.* ¶12, 763, A.2d at 109.

5

The weakness in Mr. Cookson's position is that the Court in *Burkitt* expressly limited its discussion to the Dealers Act and noted that the definition of a "motor vehicle" under that Act was narrower than the definition used in Maine's Motor Vehicle Statutes under title 29-A. *Id.* ¶11 n.7, 763 A.2d at 108 n.7. Title 29-A defines the term broadly, and "a grader could be a 'motor vehicle' for the purposes of title 29-A, but not a 'motor vehicle' for purposes of the Motor Vehicle Dealers Act." *Id.*

Insofar as the definitions contained in title 29-A are relevant, they expressly include graders under the definition of "special mobile equipment." 29-A M.R.S.A. §101(70). Other examples of "special mobile equipment" consist of heavy industrial machinery including "road construction or maintenance machinery, ditch-digging apparatus, stone crushers, air compressors, power shovels, cranes, . . . rollers, trucks used only to plow snow and to carry sand for ballast, well drillers and wood-sawing equipment used for hire or similar types of equipment." *Id.* Furthermore, while the definition of "special mobile equipment" does not include the word "vehicle," the terms are not mutually exclusive. Vehicles used to convey hand tools or parts used in operation of equipment, or to transport earth on a highway under construction, are included within the definition of "special mobile equipment." 29-A M.R.S.A. §513(1). Title 29-A defines a tractor separately as "a motor vehicle used primarily off the highway for farming, forestry or other similar types of activities." 29-A M.R.S.A. §513(82).

More generally, numerous cases have found that heavy machinery fall within the definition of a "vehicle" as the term is used in insurance policies. *See H.R. Weissberg Corp. v. N.Y. Underwriters Ins. Co.*, 272 A.2d 366, 372 (Md. 1971) (self-propelled crane); *Golding-Keene Co. v. Fidelity-Phenix Fire Ins. Co.*, 69 A.2d 856, 859 (N.H. 1949) (bulldozer and tractors generally). One case in particular found that a tractor with a backhoe

attachment was a motor vehicle, even while actively in the process of digging a hole. *North River Ins. Co. v. Pomerantz*, 492 S.W.2d 312, 315–16 (Tex. Civ. App. 1973).

There is no question that Mr. Cookson's tractor was motorized, self-propelled, and capable of traveling along public and private ways. From the above, the court determines that the term "vehicle" as used in Mr. Cookson's insurance policies easily encompasses his Case 590M tractor as a matter of law. The court therefore finds that the tractor is, as the parties appear to concede, a motor vehicle or conveyance within the policy exclusion.

Finding that the tractor is excluded from coverage, the court must next determine whether the tractor falls within the exception to the exclusion. Despite being a motor vehicle, the tractor will be covered by the policy if it was "not subject to motor vehicle registration." Maine addressed this question directly in the case of *Kimball v. New England Guaranty Insurance Co.*, 642 A.2d 1347 (Me. 1994). In *Kimball*, an old truck owned by the insureds rolled into the street and collided with a passing car. *Id.* at 1348. The injured motorist brought a reach and apply action to recover under the insureds' homeowner's insurance policy, which contained a motor vehicle exclusion and exception materially identical to the one at issue in this case. *Id.*

"[A]t the time of the accident, the pickup truck was unregistered and unfit for inspection, and . . . the [insureds] hoped to use the truck to plow their driveway." *Id.* The fact that the insureds did not intend to ever use truck on a public way was, however, irrelevant. The Law Court determined that "the phrase 'subject to motor vehicle registration'" was unambiguous, and that the exclusion was "not concerned with fact-specific analyses of whether a *particular* vehicle will or will not be registered." *Id.* at 1348–49. The exclusion was instead concerned with *types* of vehicles. A pickup truck was a type of vehicle that could be registered for road use "under the provisions

7

for motor vehicles." *Id.* at 1349. As such, it was objectively "subject to motor vehicle registration" and therefore excluded from coverage.

This objective test makes the parties' discussion about the frequency of Mr. Cookson's trips between his properties irrelevant. What matters is that Maine's Motor Vehicle Statutes provide for the registration of both tractors and special mobile equipment.[1] 29-A M.R.S.A. §§509, 513. Mr. Cookson's Case 590M tractor was thus subject to motor vehicle registration, and does not fit the exception to his policy exclusion.

## CONCLUSION

The court concludes that Mr. Cookson's tractor was a vehicle subject to motor vehicle registration not covered by his homeowner's insurance policies. The court therefore Grants the defendant's motion for summary judgment.

Dated:      March 22, 2011

G. Arthur Brennan
Justice, Superior Court

ATTORNEY FOR PLAINTIFF:
THOMAS G. VAN HOUTEN, ESQ.
LAW OFFICE OF THOMAS VAN HOUTEN
469 MAIN ST., SUITE 101
SPRINGVALE ME  04083

ATTORNEY FOR DEFENDANT:
JOHN WHITMAN, ESQ.
RICHARDSON WHITMAN LARGE & BADGER
PO BOX 9545
PORTLAND ME  04112-9545

---

[1] The Motor Vehicle Statutes also provide for the registration and permitting of "self-propelled golf carts, lawn mowers, ATV's and other similar vehicles" for limited highway use. 29-A M.R.S.A. §501(8).

8