Motion for Rehearing Overruled; Affirmed in Part, Reversed and Remanded
in Part, Opinion of September 30, 2004 Withdrawn and Opinion filed March 31,
2005









Motion for Rehearing Overruled; Affirmed in Part,
Reversed and Remanded in Part, Opinion of September 30, 2004 Withdrawn and
Opinion filed March 31, 2005.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-00164-CV

____________

 

CHRISTINE H. DE LAURENTIS, Appellant

 

V.

 

UNITED SERVICES AUTOMOBILE ASSOCIATION A/K/A USAA, Appellee

_______________________________________________________

 

On Appeal from the 334th District Court

Harris County, Texas

Trial Court Cause No. 01-58676

_______________________________________________________

 

O P I N I O N   O N  
M O T I O N   F O R   R E H E A R I N G

We overrule appellant Christine
de Laurentis=s motion for rehearing.  We withdraw the opinion issued in this case
on September 30, 2004, and we issue the following opinion in its place.








This case arises from an
insurance-coverage dispute between a policyholder who suffered mold damage to
her apartment and an insurer who denied coverage under a renter=s
insurance policy.  The policyholder sued
the insurer asserting a breach-of-contract claim as well as various
extracontractual claims.  The trial court
granted summary judgment in favor of the insurer.  At issue is whether the policyholder=s claim
for mold damage that purportedly resulted from a leaking air conditioning unit
in her apartment is covered under her renter=s
insurance policy.  We find coverage for
any such damage for which causation is ultimately established, and reverse and
remand in part on this issue.  However,
we affirm the trial court=s
judgment as to the extracontractual claims. 

I.  Factual and
Procedural Background

In August of 2000,
appellant/plaintiff Christine H. de Laurentis (APolicyholder@)
purchased a renter=s
insurance policy from United Services Automobile Association a/k/a USAA (AInsurer@).  The Insurer used a Texas Homeowner=s Policy
Form B-T (AHOB-T@) in
issuing the policy.  The following month,
the Policyholder discovered the air conditioning unit in her apartment was
leaking water into the closet of her bedroom, and black mold was growing on one
wall of the closet.  The apartment
complex purportedly repaired the leak and the damage.  

In June of 2001, the Policyholder
concluded that the mold had not been remediated and, in fact, had spread
throughout her apartment.  She filed a
claim with the Insurer, seeking compensation under her renter=s
insurance policy for temporary residence and for remediation of her furniture,
art work, clothing, and other personal belongings.

The Policyholder asked the City
of Houston to test her apartment for mold in July of 2001.  The ambient air in the Policyholder=s
apartment tested within the normal acceptable range.  However, swab samples taken throughout the
apartment isolated two fungal items: stachybotrys and penicillium.  The Policyholder=s
belongings and the wall of her closet, which previously had exhibited mold,
were not tested.  A swab sample taken
from another wall of the same closet showed no indications of mold.








In pursuing her claim, the
Policyholder spoke to Brenda Essex, a representative of the Insurer, on two
occasions before Essex sent a claims investigator to the Policyholder=s
apartment.  Essex informed the
Policyholder during both telephone conversations that her claim would be
denied, stating as a basis for the denial that mold is not a named peril in the
Policyholder=s HOB-T policy.  Candace Shook, a claims investigator for the
Insurer, went to the Policyholder=s
apartment on July 19, 2001, and determined from the apartment complex that
there had been a leak in the air conditioning system.  While at the Policyholder=s
apartment, Shook acknowledged the claim, and on behalf of the Insurer, she
offered to pay for what had been damaged by the water.  Shook told the Policyholder during the
inspection that the mold damage was specifically excluded by the HOB-T
policy.  That same day, Shook sent the
Policyholder a letter reiterating that mold was specifically excluded by the
HOB-T policy.  However, in the letter
Shook informed the Policyholder that the Insurer would pay for damage to any
items that had gotten wet from the leak. 
Additionally, Shook=s letter
stated that, because the apartment complex had requested the Policyholder to
move to another unit so that workers could make additional repairs necessitated
by the water damage, the Insurer would cover the expenses associated with a
move to another apartment.  Shook
subsequently sent another letter to the Policyholder=s
attorney, advising that the Insurer did not believe the HOB-T policy covered
any damage that may have been caused by the mold.  In order to process the Policyholder=s claim,
Shook sent a letter on August 30, 2001, requesting the Policyholder to provide
an inventory of personal property damaged by water.  The Policyholder did not provide an
inventory.

The Policyholder sued the Insurer
for breach of the insurance policy and asserted various extracontractual
claims, including a claim for bad faith handling of her insurance claim.  The parties filed cross-motions for summary
judgment, each asking the trial court to interpret the relevant policy
provisions as a matter of law.  The
Policyholder sought partial summary judgment on the issue of coverage; the
Insurer sought dismissal of the Policyholder=s
breach-of-contract and extracontractual claims. 
The Insurer asserted the following grounds in its motion for final
summary judgment:








(1)       The Policyholder=s failure to comply with
the HOB-T policy conditions precludes coverage.

(2)       The Policyholder=s breach-of-contract claim
fails as a matter of law because there is no coverage under the HOB-T policy
for mold damage to the Policyholder=s personal property.

(3)       The Policyholder=s deposition testimony
shows that her extracontractual claims fail as a matter of law.

(4)       The Policyholder=s extracontractual claims
are barred as a matter of law because a bona fide coverage dispute exists.

 

The trial court denied the
Policyholder=s motion, granted the parts of
the Insurer=s motion seeking dismissal of the
extracontractual claims, and denied the parts of the Insurer=s motion
seeking dismissal of the breach-of-contract claim.  Both parties filed motions for
reconsideration.  In her motion for
reconsideration, the Policyholder asked the trial court to set aside its
dismissal of her extracontractual claims and to grant her prior motion for
partial summary judgment as to her breach-of-contract claim.  In its motion for reconsideration, the Insurer
asked the trial court to stand by its dismissal of the extracontractual claims
and to reverse its denial of the Insurer=s motion
for summary judgment as to the breach-of-contract claim, so as to grant final
summary judgment in favor of the Insurer as to the Policyholder=s claims.
Upon reconsideration, the trial court vacated its previous order, granted the
Insurer=s motion
for final summary judgment, and entered a final judgment dismissing all of the
Policyholder=s claims.[1]








II.  Issues Presented

On
appeal, the Policyholder presents the following issues:

1.  Contract Interpretation.  The Policyholder=s insurance contract
provides coverage for a Aphysical loss@ that is Acaused by@ the Aaccidental discharge,
leakage or overflow of water@ from an Aair conditioning system@ unless Athe loss is specifically
excluded.@  Did the trial court err in refusing to find
coverage as a matter of law for mold damage the Policyholder claims was caused
by an air conditioner water leak?

2.  Waiver of Condition Precedent.  May the Insurer avoid liability for
wrongfully denying the Policyholder=s claim simply because the
Policyholder did not present an itemized list of damaged property when the
Insurer rejected the Policyholder=s claim immediately and
without investigation, contending that mold was not a covered peril under the
HOB-T policy?

3.  Extracontractual Claims.  If this court construes the policy language
at issue to provide coverage for the Policyholder=s claimed loss, is the
Policyholder entitled to have her extracontractual claims considered by a jury
because the issue presented C whether an insurer is liable in damages for
denying a claim after its liability has become reasonably clear C is a question of fact
rather than law?[2]

 

III.  Standard
of Review

Although the Policyholder asks
this court to review the trial court=s denial
of her motion for partial summary judgment, this ruling is not before us because
that motion did not seek a final judgment. 
See CU Lloyd=s of Tex.
v. Feldman, 977 S.W.2d 568, 569 (Tex. 1998) (stating that, before a court of
appeals may review an order denying a cross-motion for summary judgment not
covered by an interlocutory appeal statute, both parties must have sought final
judgment in their cross-motions for summary judgment, unless an exception
applies that is not applicable to the instant case).  








In reviewing the Insurer=s motion for summary judgment, we
take as true all evidence favorable to the Policyholder, and we make all
reasonable inferences in her favor.  See
Dolcefino v. Randolph, 19 S.W.3d 906, 916 (Tex. App.CHouston [14th Dist.] 2000, pet.
denied).  If the Insurer=s motion and summary‑judgment
evidence facially establish its right to judgment as a matter of law, the
burden shifts to the Policyholder to raise a genuine, material fact issue
sufficient to defeat summary judgment.  See
id.  Because the trial court=s order
granting summary judgment does not specify the grounds for its ruling, we must
affirm summary judgment if any of the summary‑judgment grounds are
meritorious.  See FM Props. Operating
Co. v. City of Austin, 22 S.W.3d 868, 872 (Tex. 2000).

IV.  Non-Waiver
of Condition Precedent

In her second issue, the
Policyholder asserts the trial court erred in granting summary judgment based
on the Insurer=s argument that, because the
Policyholder failed to comply with a condition precedent in her HOB-T policy,
she is precluded from suing for breach of the insurance contract.  Specifically, the Insurer states that the Policyholder
failed to provide the company with a written inventory of the damaged personal
property.  The Insurer claims the
Policyholder=s failure prevented the Insurer
from inspecting the damaged property and determining whether the Policyholder
had sustained a physical loss from a named peril in her policy.  The Policyholder argues that the evidence
reflects the Insurer did not deny her claim because she failed to meet any
condition precedent in the policy, but simply because she claimed her losses
were mold-related.

The HOB-T policy, under the
heading of ASection ICConditions,@ and
subheading of ADuties After Loss,@ states:

a.         Your Duties After Loss.  In case of a loss to covered property caused
by a peril insured against, you must:

(1)       give prompt written notice to us of the
facts relating to the claim.

. . . 








(4)       furnish a complete inventory of damaged
personal property showing the quantity, description and amount of loss.  Attach all bills, receipts and related
documents which you have that justify the figures in the inventory.

 

The Insurer=s agents
told the Policyholder that only water-damaged property C items
that actually got wet C would be
covered under the HOB-T policy.  The
Insurer admits its representatives told the Policyholder that her claim for
recovery of mold-damaged property would be denied on the stated ground that
mold was not a covered peril under her policy. 








The provisions of an insurance
policy regarding an insured=s duties
after a loss are for the benefit of the insurance company.  See Sanders v. Aetna Life Ins. Co.,
146 Tex. 169, 205 S.W.2d 43, 44B45 (1947)
(discussing this principle in the context of notices and proofs of loss).  But, an insurer=s denial
of a claim before the deadline for presenting the required proof of loss (or
other documentation) waives that requirement as a matter of law.  Id. (finding that, because the
insurer denied the claim before the deadline to submit proofs of continued
total and permanent disability, the insurer waived that requirement because
nothing occurred after the denial that Awould
indicate to [the insured] that the submission of further proofs of loss would
be more than an idle formality@); see
also North River Ins. Co. v. Pomerantz, 492 S.W.2d 312, 313 (Tex. App.CHouston
[14th Dist.] 1973, writ refused n.r.e.) (stating that A[a]
denial of liability by the insurance company within the period allowed
for filing proof of loss, on grounds other than the failure to submit proof of
loss, constitutes waiver of this requirement@).  However, A[i]t is a
well-known principle in this class of cases that the acts relied on as constituting
a waiver should be such as are reasonably calculated to make the assured
believe that a compliance on his part with the stipulations providing the mode
of proof of loss, and regulating the appraisement of the damage done, is not
desired, and that it would be of no effect if observed by him.@  Scottish Union & Nat=l Ins.
Co. v. Clancey, 83 Tex. 113, 18 S.W. 439, 440B41
(1892); see also North River Ins. Co., 492 S.W.2d at 314.  This court has held that it is of no
consequence Awhether the insurance company
informs the insured that the claim absolutely will not be paid or simply
indicates that it is not planning to pay the claim unless some new development
arises.@  See North River Ins. Co., 492 S.W.2d
at 313.  It is enough that the actions of
the insurance company would reasonably lead the insured to believe that the
company is not going to pay the claim because of some reason other than failure
to file the required proof of loss.  Id.
at 314.  The Insurer recognizes this rule
of law, but contends it merely mentioned during oral conversations with the
Policyholder that the HOB-T policy did not include mold as a named peril.  The Insurer argues there is no evidence that
it denied the Policyholder=s claim
under the named peril she was asserting C physical
loss caused by the accidental discharge, leakage, or overflow of water from
within an air conditioning system.

            The record does not support the
Insurer=s
argument.  The Insurer=s
representatives told the Policyholder on multiple occasions that the claim for
her mold-damaged property would be denied. 
Shook repeatedly informed the Policyholder that the Insurer would pay
only for damaged items that actually got wet. 
Nothing in the record indicates the Policyholder reasonably would have
considered the completion of the inventory to be anything more than an idle
formality.  The Insurer asserts that the
Policyholder nonetheless should have completed and returned the inventory of
loss its representative requested if the Policyholder truly believed that the
mold was caused by leaking water and the alleged damage was thus covered under
her HOB-T policy.  Essentially, the
Insurer argues that the Policyholder should have completed the inventory if she
believed the claim to be covered despite the Insurer=s
unequivocal statements, both orally and in writing, that the claim would be
denied.  

Waiver of a condition precedent
is evaluated according to what the insured reasonably would have thought under
the circumstances.  Id.  For the reasons noted, a reasonable
policyholder would have considered the filing of an inventory an exercise in
futility.  Moreover, the inventory the
Insurer sought was not a complete inventory of the Policyholder=s damaged
property, but an inventory of personal items that actually got wet, which
logically would have excluded the property the Policyholder claimed was damaged
by mold.








We conclude the Insurer waived
the requirement for the personal property inventory when it informed the
Policyholder that mold was not covered under her policy and that the Insurer
would pay only for items that got wet. 
The condition precedent having been waived, the Policyholder is not
barred from recovery in a suit for breach of the insurance contract.  Accordingly, we sustain the Policyholder=s second
issue.

V.  Construction and Interpretation of The Policy

In her
first issue, the Policyholder asserts the trial court erred in finding no
coverage as a matter of law under the insurance policy.[3]  Texas courts interpret insurance policies
according to the rules of contract construction.  Kelley‑Coppedge, Inc. v. Highlands
Ins. Co., 980 S.W.2d 462, 464 (Tex. 1998). 
In applying these rules, our primary concern is to ascertain the parties= intent
as expressed in the language of the policy. 
See id. at 464.  In
determining the intention of the parties, we look only within the four corners
of the insurance agreement to see what is actually stated, not what was
allegedly meant.  See Esquivel v.
Murray Guard, Inc., 992 S.W.2d 536, 544 (Tex. App.CHouston
[14th Dist.] 1999, pet. denied).  We must
give effect to all contractual provisions so that none will be rendered
meaningless.  Kelley‑Coppedge,
980 S.W.2d at 464.  If the policy
language is worded so that it can be given a definite or certain legal meaning,
it is not ambiguous, and we construe it as a matter of law.  See id. at 464; cf. Coker v. Coker,
650 S.W.2d 391, 393 (Tex. 1983) (holding that a contract is Aambiguous
when its meaning is uncertain and doubtful or it is reasonably susceptible to
more than one meaning@).  Whether a contract is ambiguous is a question
of law.  Kelley‑Coppedge,
980 S.W.2d at 464.  An ambiguity does not
arise simply because the parties offer conflicting interpretations.  Id. at 465. 








A.  The
Operative Policy Provisions

The
Policyholder, as the insured, asserted a first-party claim under her HOB-T
policy.  A first-party claim sounds in
contract and thus is determined by the terms of the insurance agreement between
the insurer and the insured.  Under the
heading of ASection ICPerils
Insured Against,@ and
subheading of ACoverage B (Personal Property),@ the
insuring agreement states in pertinent part:

We insure against physical
loss to the property described in Section I Property Coverage B (Personal
Property) caused by a peril listed below, unless the loss is specifically
excluded . . . .

 

9.         Accidental Discharge, Leakage or
Overflow of Water or Steam from within a plumbing, heating or air
conditioning system or household appliance.

 

The parties dispute whether the
policy language obligates the Insurer to pay the Policyholder for mold damage
purportedly caused by a leaking air conditioning unit in the Policyholder=s
apartment.  The Policyholder contends the
apartment=s air conditioning system leaked
and caused mold to grow and spread throughout her apartment.  The mold allegedly damaged the Policyholder=s
personal belongings, furniture, art work, and clothing.  Thus, she alleges facts that would trigger
coverage if the HOB-T policy covers such damage.[4]









The Insurer contends the Policyholder=s claim
for purported mold damage to her personal property is not covered because no
named peril for Amold@ was
included in her HOB-T policy.  Therefore,
the Insurer argues, the Policyholder=s real
claim is that mold C not the
accidental discharge of water by the air conditioning system C caused
her damage.  Must mold be specifically
identified as a named peril in the HOB-T policy for coverage to exist?  Or, does coverage exist because the
Policyholder alleges a Aphysical
loss@ caused
by a peril named in the policy?  To
resolve this issue, we must determine the meaning of the operative policy
language.  No Texas court has addressed
this precise issue in construing the language of the standard HOB-T policy.[5]


B.  The Meaning of the Policy Language[6]

The HOB-T policy is a named-perils policy that
covers Aphysical
loss to the property . . . caused by a named peril.@  It is helpful to our analysis to characterize
the perils contributing to the loss and to determine which perils are covered
and which are excluded.  The accidental
discharge, leakage, or overflow of water from within an air conditioning system
is a named peril.  Because the HOB-T
policy is a named-perils policy, all perils not specifically included in the
policy are excluded from coverage.  See
Ingersoll-Rand Fin. Corp. v. Employers Ins. of Wausau, 771 F.2d 910, 912
(5th Cir. 1985) (applying Louisiana law).








If there is a single guiding principle that
governs our interpretation of the insurance policy, it is to give effect to the
parties= intent
as expressed in the policy=s plain
language.  See Forbau v. Aetna Life
Ins. Co., 876 S.W.2d 132, 133 (Tex. 1994). 
The HOB-T policy does not define the terms Aphysical
loss@ or Acaused by@ so we
look to the plain meaning of these undefined terms.  ALoss@
signifies Athe act of losing or the thing
lost; it is not a word of limited, hard and fast meaning and has been
synonymous with or equivalent to, >damage= . . . .@  Black=s Law Dictionary 945 (6th ed. 1990) (stating that Aloss@ in an
insurance policy Ameans a
state of fact of being lost or destroyed, ruin or destruction.@).  A physical loss is simply one that relates to
natural or material things.  See Webster=s Third
New Int=l Dict. 1706 (1993) (defining Aphysical@ as Aof or
relating to natural or material things as opposed to things mental, moral,
spiritual, or imaginary@).  ACaused@ is
defined as Ato serve as cause or occasion of:
bring into existence: make,@ and Acause@ is
defined as Asomething that occasions or effects
a result: . . . something that . . . produces a phenomenon.@  Webster=s Third New Int=l Dict. at
356.  Applying the plain meaning of the
policy language, we conclude that the policy covers tangible damage to the
Policyholder=s personal property by water
leaking from an air conditioning unit. 
Such water leaks can produce mold damage C a
tangible loss to the Policyholder=s
personal property.  Therefore, the policy=s plain
language, when read in context, giving effect to all contractual provisions, is
unambiguous and requires payment for mold damage caused by a leaking air
conditioning unit. 

This plain-language interpretation is supported by
case law.  The Tenth Court of Appeals has
discussed potential coverage under a different insurance policy by
distinguishing between a Aphysical
loss@ and a Adirect
physical loss.@ 
See Travelers Indem. Co. v. Jarrett, 369 S.W.2d 653 (Tex. App.CWaco
1963, no writ).  In Travelers, the
court stated:

Where insurance against property damage is only against Adirect@ loss by lightning it has
been said the quoted term means Aimmediate@ or Aproximate,@ as distinguished from
remote or incidental causes.  But a
provision insuring against Aloss or damage caused by lightning@ renders the insurer
liable for all known effects of lightning, Aand includes all loss or
damage which results as a direct and natural consequence of the
lightning, notwithstanding other incidental agencies may be incidental in
adding to the loss or damage.@

 








Id. at 655 (quoting 11 Couch,
Insurance 2d, '' 42.355,
42.357) (emphasis added).[7]  Thus, Texas courts have determined that a
physical loss, as opposed to a direct physical loss, includes the natural
consequences of the named peril. 
Additionally, the United States Supreme Court has determined that all
consequences naturally flowing from a peril insured against are properly
attributable to the peril.  Lanasa
Fruit S.S. & Importing Co. v. Universal Ins. Co., 302 U.S. 556, 565, 58
S. Ct. 371, 375, 82 L. Ed. 422 (1937).  

A case from the state of Washington illustrates
this principle.  See Bowers v. Farmers
Ins. Exch., 991 P.2d 734 (Wash. Ct. App. 2000).  In Bowers, the insurance company
denied coverage for mold damage when the insured=s rental
house was damaged after tenants converted the house into a hothouse for growing
marijuana.  Id. at 735.  As a part of the operation, all heat in the
house was diverted to the basement.  Id.
at 736.  As a result of the operation,
mold grew throughout the house.  Id.  The insurance company refused to compensate
the insured for her mold-related damage, contending mold was excluded under the
policy.  The insured argued that the
cause of her damage was not the mold, but the vandalism of her tenants, a
covered peril.  The Bowers court
held that A[h]ere, there can be no
reasonable difference of opinion regarding the cause of [the insured=s]
loss.  It was the tenants= acts,
which >in an
unbroken sequence . . . [produced] the result for which recovery is sought[.]=@  Id. at 738.  








The Insurer argues, however, that mold damage
cannot be covered under the HOB-T policy. 
It contends that a named-perils policy excludes all risks not
specifically included in the insurance contract, and because mold is not a
named peril in the policy, mold is excluded from coverage.  The Insurer=s
argument ignores the undeniable fact that mold can be damage. We do not share
the Insurer=s narrow view, but find that Amold may
be either damage or a cause of loss, depending on the circumstances.@[8]  See Liristis v. Am. Family Mut. Ins. Co., 61 P.
3d 22, 25 (Ariz. Ct. App. 2002) (finding homeowner=s policy
did not exclude mold damage caused by a covered event); see also Keenan v.
Wausau Lloyd=s Ins.
Co., No. 04-98-00087-CV, 1998 WL 652332, at *3 (Tex. App.CSan
Antonio Sept. 23, 1998, no pet.) (not designated for publication) (holding that
homeowner=s named-perils policy covered cost
for accessing defectively constructed plumbing lines after named peril caused
damage to homeowner=s
property); Kemmerer v. State Farm Ins. Co., No. 01-5445, 2004 WL 87017,
at * 2 (E.D. Penn. Jan. 19, 2004) (holding that A[i]f the
leak from the powder room caused the mold infestation, that leak would fall
within the peril [sudden and accidental discharge or overflow of water]
outlined in the homeowner=s
insurance policy.@); Prudential
Prop. & Cas. Ins. Co. v. Lillard-Roberts, No. CV-01-1362-ST, 2002 WL
31495830, at * 9B10 (D.
Or. June 18, 2002) (finding that, in a named-perils policy, the Aaccidental
discharge or overflow of water@ peril
provided for coverage of physical mold damage caused by a water leak).








If a named peril C the
accidental discharge, leakage, or overflow of water from within an air
conditioning system C caused
the alleged mold, the damage could be a physical loss covered under the HOB-T
policy because this type of damage was not specifically excluded from coverage
in the policy.  Accordingly, we sustain
the Policyholder=s first
issue to the extent that it asserts that the trial court erred in granting the
Insurer=s motion
for summary judgment as to the breach-of-contract claim.  We reverse the part of the trial court=s
judgment that granted summary judgment in favor of the Insurer as to the
breach-of-contract claim, and we remand to the trial court for further
proceedings consistent with this opinion.

VI.  The Extracontractual Claims

In her third issue, the Policyholder asserts that
the Policyholder is entitled to have her extracontractual claims considered by
a jury because the issue of whether an insurer is liable for denying a claim
after its liability has become reasonably clear is a question of fact rather
than law.[9]  In analyzing the Policyholder=s third
issue, we address the following: (1) whether, under all circumstances, her
extracontractual claims stand or fall along with her breach-of-contract claim;
and (2) whether the Policyholder has negated the Insurer=s third
ground for summary judgment regarding her deposition testimony and her
extracontractual claims. 

A.        Do the Policyholder=s extracontractual claims
always stand or fall along with her breach-of-contract claim?

The Policyholder asserts that her
breach-of-contract claim and extracontractual claims must stand or fall
together and that this court=s
reversal of the trial court=s summary
judgment in favor of the Insurer as to the contract claim necessarily requires
a reversal of the trial court=s
dismissal of the extracontractual claims. 
The Policyholder cites no cases that stand for this proposition.  








First, it is important to recognize that this
court has not determined that the alleged physical damage to the Policyholder=s
personal property is covered by the insurance policy in question.  Rather, we have held that the trial court
erred in granting summary judgment as to the breach-of-contract claim based on
the grounds asserted in the Insurer=s motion
for summary judgment.  On remand, the
Policyholder still must prove physical loss, not specifically excluded, to her
personal property caused by a named peril in her policy.  For example, if the Policyholder can prove
that her alleged mold damage constitutes a physical loss to her personal
property caused by an accidental discharge, leakage, or overflow of water or
steam from within a plumbing, heating, or air conditioning system or household
appliance, then the Policyholder may be able to recover on her
breach-of-contract claim.  However, our
ruling in this appeal has nothing to do with evidence, if any, that exists to
prove the Policyholder=s
breach-of-contract claim. 

Second, there is a significant distinction between
an insurer=s potential liability to pay an
insured as to claims allegedly covered by its insurance policy and the insurer=s
potential liability for extracontractual claims such as a claim for bad
faith.  See Transp. Ins. Co. v. Moriel,
879 S.W.2d 10, 17B18 (Tex.
1994).  Simply reversing a trial court=s summary
judgment as to a coverage claim does not necessarily mean that the trial court=s summary
judgment as to the extracontractual claims must be reversed.  See, e.g., Emmert v. Progressive
County Mut. Ins. Co., 882 S.W.2d 32, 35B36 (Tex.
App.CTyler
1994, writ denied) (reversing trial court=s summary
judgment in favor of insurer as to coverage issue, affirming summary judgment
as to extracontractual claims, and rejecting insured=s
argument that a reversal of summary judgment as to coverage, by itself, raises
a material fact issue requiring a reversal of summary judgment as to
extracontractual claims).  Therefore, we
reject the Policyholder=s
argument that this court=s
reversal of the trial court=s summary
judgment as to the breach-of-contract claim creates a fact issue and requires
reversal as to her extracontractual claims.








B.        Has
the Policyholder negated the Insurer=s third ground for summary
judgment regarding her deposition testimony and her extracontractual claims? 

Additionally, one of the grounds
that the Insurer asserted in its motion for summary judgment is that the
Policyholder=s deposition testimony shows that
her extracontractual claims fail as a matter of law.  In her deposition, the Policyholder testified
that the Insurer committed the following alleged wrongs: 

(1)       The Insurer did not test her belongings
so that the Policyholder would know how contaminated they are.

(2)
      The Insurer did not offer to
remediate her belongings.

(3)       The Insurer continually denied her
insurance claim.

 

On two occasions during her deposition, the
Policyholder was asked if there was anything the Insurer had done wrong, other
than refusing to test the Policyholder=s
apartment and belongings for mold and refusing to pay for items that the
Policyholder felt were damaged by mold. 
On both occasions, the Policyholder=s only
addition to this list of alleged wrongs was that the Insurer also continually
denied her insurance claim.  The Insurer
asserted in its motion for summary judgment that this testimony shows that the
Policyholder=s extracontractual claims fail as
a matter of law.  

On appeal, the Policyholder has
not negated this ground for summary judgment. 
Therefore, on this basis alone, we can affirm the trial court=s summary
judgment as to the extracontractual claims. 
See Lewis v. Adams, 979 S.W.2d 831, 833 (Tex. App.CHouston
[14 Dist.] 1998, no pet.) (holding that summary judgment must be affirmed if
there were multiple grounds for summary judgment and the appellant does not
attack all grounds on appeal). 
Furthermore, the Policyholder attached no evidence to her response in
opposition to the Insurer=s motion
for summary judgment.[10]  The Policyholder=s
response 








contains
only the following arguments as to the extracontractual claims:  (1) if the trial court grants plaintiff=s motion
for partial summary judgment, then the Insurer=s
position in this litigation was merely pretextual, and (2) the Insurer=s
argument that mold is not a covered peril is intellectually dishonest because
the Policyholder has pleaded that mold was the damage that was caused by the
covered peril.[11]  Even if the Policyholder had negated this
summary-judgment ground on appeal, we still would conclude that the
Policyholder=s deposition shows that her
extracontractual claims fail as a matter of law.  See United States Fire Ins. Co. v.
Williams, 955 S.W.2d 267, 268B69 (Tex.
1997).  

For the above reasons, we conclude the trial court
properly granted summary judgment as to the Policyholder=s
extracontractual claims.  Accordingly, we
overrule the Policyholder=s third
issue.

VII.  Conclusion








The trial court erred in granting
summary judgment as to the Policyholder=s
breach-of-contract claim insofar as its ruling was based on the Policyholder=s failure
to present an itemized list of damaged property and based on the alleged
absence of coverage as a matter of law for mold damage to the Policyholder=s
personal property.  The Policyholder=s
extracontractual claims do not necessarily stand or fall along with her
breach-of-contract claim.  Further, the
Policyholder has not negated the Insurer=s third
ground for summary judgment regarding her deposition testimony and her
extracontractual claims.   Accordingly,
the trial court properly granted summary judgment as to those claims.  We reverse the trial court=s
judgment to the extent it dismissed the Policyholder=s
breach-of-contract claim, and we sever and remand that claim for further
proceedings consistent with this opinion. 

 

/s/        Kem
Thompson Frost

Justice

 

Judgment rendered and Opinion filed March 31, 2005.

Panel consists of Justices Hudson, Fowler, and Frost.

 

 











[1]  In her motion
for rehearing, the Policyholder asserts for the first time that the trial court=s final judgment did not dismiss her extracontractual
claims on the merits but rather dismissed them as being moot based on the
parties= motions for reconsideration. The Policyholder asserts
that the trial court=s judgment implicitly dismissed these claims as moot
based on its granting of the Insurer=s motion
for summary judgment as to coverage with the understanding that the
extracontractual claims would be revived automatically and reinstated upon
reversal of the trial court=s coverage ruling by an appellate court.  However, nothing in the record, including the
parties= arguments in their motions for reconsideration,
indicates that the Policyholder ever nonsuited, conditionally withdrew, or
asked the trial court to conditionally dismiss or abate her extracontractual
claims. The trial court did withdraw its prior order and did state that its
ruling was based, in part, on the parties=
representations that there are no disputed issues of material fact in
connection with the breach-of-contract claim.  Nonetheless, based on the language of the
trial court=s judgment, we conclude that the trial court granted
the Insurer=s motion for final summary judgment, without
specifying the grounds, and dismissed all of the Policyholder=s claims on the merits, rather than on any alleged
mootness ground.  





[2]  The
Policyholder casts her issue as being conditioned on this court=s finding that the HOB-T policy provides coverage for
her alleged loss.  We interpret this
issue to fairly include the same argument conditioned on a reversal of the
trial court=s summary judgment, even if that reversal does not
include a determination that the insurance policy provides coverage for the
Policyholder=s alleged loss. 
See Tex. R. App. P.
38.1(e).





[3]  As stated
above, to the extent the Policyholder asserts the trial court erred in refusing
to find coverage as a matter of law and grant her motion for partial summary
judgment, this issue is not before us.  See
CU Lloyd=s of Tex.,
977 S.W.2d at 569.





[4]  The Insurer
argues in its appellate brief that the Policyholder never produced any
summary-judgment evidence that proved or even implied (1) that any of the
Policyholder=s belongings were ever contaminated by mold; or (2)
that the source of any mold contamination was the purported air conditioning
leak.  However, neither party presented
the issue of causation to the trial court; thus, the Policyholder had no
obligation to present causation evidence at that time.  The Insurer acknowledged at oral argument
that the issue presented to the trial court was whether the Policyholder=s HOB-T policy would cover mold damage caused by a
leaking air conditioning system, presuming the Policyholder is able to prove
causation. 





[5]  In this case, the parties rely on
many cases addressing a mold exclusion clause and the definition of an Aensuing loss@ provision, neither of which is at
issue here.  Thus, we conclude cases
discussing the meaning of Aensuing loss@ do not control our resolution of the issue now before us. 





[6]  The Insurer
filed a motion in this court asking us to strike an improper inclusion in the
Policyholder=s September 17, 2003 AMemorandum
of Authorities.@  The memorandum
contained an unsigned, unverified ATexas
Department of Insurance Exempt Filing Notification@ concerning the adoption of amendatory mandatory
endorsements, which was not in the record. 
Our review is confined to the evidence in the appellate record.  See Sabine Offshore Serv., Inc. v. City of
Port Arthur, 595 S.W.2d 840, 841 (Tex. 1979).  Furthermore, it is improper for parties to
rely on matters outside the record in making arguments to the court.  See, e.g., Melendez v. Exxon Corp.,
998 S.W.2d 266, 280 (Tex. App.CHouston [14th Dist.] 1999, no pet.) (holding parties
should confine their arguments and factual recitations to matters contained in
the record).  Therefore, we do not
consider the improper item submitted by the Policyholder and confine our review
to the appellate record.





[7]  The Insurer attempts to distinguish the
Travelers case by arguing that the Policyholder has not demonstrated
water was the actual cause of her mold damage. 
Again, causation was not an issue presented to the trial court; the
relevant issue before the trial court was whether as a matter of law mold
damage caused by a water leak would be covered under the HOB-T policy.  





[8]  Citing Columbiaknit,
Inc. v. Affiliated FM Ins. Co., No. 98-434-HU, 1999 WL 619100 (D. Or. Aug.
4, 1999), the Insurer argues that mold cannot be both a loss and a cause of a
loss because the terms Aperil@ and Aphysical loss@ have
been defined differently.  In Columbiaknit,
the court defined Aperils@ as Aactive forces which cause the loss of or damage to the
insured property.@  1999 WL
619100, at *3.  It held that the Arequirement that the loss be >physical= . . .
is widely held to exclude losses that are intangible . . . [and precludes] any
claim . . . when the insured merely suffers a detrimental economic impact
unaccompanied by a distinct, demonstrable, physical alteration of the property.@  Id., at
*4.  However, nothing in the court=s ruling suggests that mold cannot at times operate as
a peril and at other times as a physical loss. 
The court found merely that the clothing in the manufacturer=s inventory would not be considered a loss unless it
was physically damaged by the mold C meaning
that the claimant must first prove demonstrable damage from the mold before it
could recover.  Id., at *7 (AGoods need not have been water-soaked from the water
intrusion to be covered.  Fabric and
garments in the [facility] that are moldy as a result . . . of the water leak
are covered property . . . . Furthermore, fabrics and garments with a
pervasive, persistent or noxious odor may also be physically damaged property .
. . . Likewise, if the plaintiff establishes at trial a class of garments which
has increased microbial counts and that will, as a result, develop either an
odor or mold or mildew, these items may be covered as well.@).





[9]  As stated
above, the Policyholder conditions her third issue on this court having
construed the policy language to provide coverage for the Policyholder=s claimed loss. 
Even though this court has not determined whether the HOB-T policy
covers the Policyholder=s alleged loss, we interpret the condition on the
third issue to fairly include this court=s
reversal of the trial court=s summary judgment as to the Policyholder=s breach-of-contract claim.  Because we have reversed this part of the
trial court=s summary judgment, we address the Policyholder=s third issue.





[10]  In the
coverage portion of her summary-judgment response, the Policyholder did
incorporate by reference into the response the Aargument
and authority cited in Plaintiff=s motion
[for partial summary judgment].@  However, this
argument and authority does not relate to the extracontractual claims.  Further, at no place in this argument and
authority or in the Policyholder=s
response does she incorporate by reference the evidence attached to her motion
for partial summary judgment.





[11]  The
Policyholder=s response in opposition as to the extracontractual
claims reads in its entirety as follows: 

[Insurer=s] argument that there is no evidence of
extracontractual causes of action because 
of the Abona fide dispute@ rule is
misplaced.  If the Court were to grant
[Policyholder=s] motion for summary judgment which prior existing
law regarding ensuing damage would dictate, then [Insurer=s] position throughout this litigation was merely
pretextual in order to avoid paying this claim. 
Its argument that Amold is not a covered peril@ is an intellectually 
dishonest [sic] in light of [Policyholder=s]
pleading that mold was the damage that was caused by the covered peril.